ALBERT E. TOUCHET, INCORPORATED, *vs.* ALFRED O. TOUCHET, administrator.

Suffolk.   January 20, 1928. — October 8, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Corporation*, By-laws, Officers and agents, Meetings of stockholders. *Contract*, Performance and breach. *Executor and Administrator. Equity Jurisdiction*, Plaintiff's clean hands.

Provisions in the agreement of association of a corporation, in its by-laws and in all certificates of stock, that, before a stockholder, his executor or administrator shall sell his stock, or at any time upon request made by the president or treasurer of a stockholder, his executor or administrator (no such request to be made within six months after the death of a stockholder), the stockholder, his executor or administrator, is re-

quired to offer his stock for appraisal by the directors and purchase by the corporation at the appraised value if the directors so elect, are valid and binding both on the corporation and stockholders.

The by-laws of a corporation contained the provisions above described, and also provisions for the holding of the annual meeting of stockholders in March for the election of certain officers and directors and of special meetings upon request to the clerk by the holders of one half or more of the capital stock; that no business should be transacted at any meeting of stockholders unless at least one half of the capital stock was represented thereat; and that directors should hold office until their successors were chosen and qualified. In January, 1926, there were three directors, one of whom, who owned one hundred seventy-one of two hundred fifty shares which comprised all the capital stock, then died. From a decree appointing an administrator of his estate in April, appeals were filed. A special administrator therefore was appointed in June who, in July, requested the clerk of the corporation, who was one of the surviving directors, to call a special meeting of the stockholders for July 20, 1926, the last previous meeting having been the annual meeting of March, 1925. There was no compliance with this request. Thereafter, the surviving directors and another whom they had elected to succeed the deceased director, as directors appraised one hundred shares of the stock of the deceased director under the by-law above described and caused demand to be made upon the special administrator for compliance with that by-law as to such shares. The appeal from the appointment of the administrator was waived on May 5, 1927, and eight days later the directors caused the corporation to bring a suit in equity against the administrator to compel such compliance. A master who heard the suit found that the request for a special meeting of stockholders was not complied with because the surviving directors desired that no such meeting should be held until they had had an opportunity to buy the intestate's shares for the corporation under the by-law and thus secure control of the corporation; and believed that if such a meeting were held, those shares would be voted in opposition to their plan; and that the defendant and the special administrator, if a stockholders' meeting had been held, intended so to vote that stock, and did not intend to offer those shares for purchase by the corporation. A final decree was entered granting the relief sought by the plaintiff. *Held*, that

(1) Under the by-laws and G. L. c. 156, § 22, the surviving directors continued to be directors of the corporation until their successors were chosen and qualified;

(2) As directors, they could not rightly manipulate the affairs of the corporation primarily with the design of securing control of it to one group of stockholders, or of excluding another group;

(3) It was the duty of the directors to comply with the by-law requiring annual meetings of stockholders for the election of officers and directors by calling a meeting as soon as possible after there was legal representation of the stock of the defendant's intestate; the right to such a meeting was one of value to stockholders of a corporation, of which they could not be deprived by the corporate officers;

(4) The legal representative of the estate of the deceased stockholder was a stockholder of at least one half of the capital stock of the corporation within the provisions of the by-law relating to special meetings of stockholders; and it was within the powers of the special administrator under G. L. c. 193, § 11; c. 155, § 21, to demand such a meeting;

( 5) No excuse appeared for the delay in calling a meeting after the special administrator's demand; the directors were not justified in waiting until the appointment of the administrator even though they could not have enforced against the special administrator the rights of the corporation under the by-law relating to the purchase of stock by it;

(6) Because of the conduct of its directors and officers, the plaintiff deprived the estate of the deceased stockholder of its right to participate in the corporate affairs of the plaintiff, which was such a breach of the contractual relation between the plaintiff and the estate under the by-law sought to be enforced by the plaintiff as to bar its right to maintain the suit;

(7) The final decree must be reversed and a decree entered dismissing the bill.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on May 13, 1927, and afterwards amended, and described in the opinion.

The suit was referred to a master, material facts found by whom are stated in the opinion. The suit thereafter was heard by *Pierce,* J., by whose order there were entered an interlocutory decree confirming the master's report and a final decree in accordance with the prayers of the bill. The defendant appealed.

The case was argued on January 20, 1928, before *Rugg,* C.J., *Braley, Carroll,* & *Sanderson,* JJ. At the consultation of the court on October 8, 1928, *Braley,* J., was unable to participate by reason of illness, and the case thereafter was considered and determined by all the other Justices excepting *Pierce,* J., who had heard it as single justice.

*F. P. Garland,* (*J. C. Thompson* with him,) for the defendant.

*J. H. Devine,* for the plaintiff.

RUGG, C.J. The plaintiff seeks (1) to compel, pursuant to one of its by-laws, the defendant, as administrator of the estate of Albert E. Touchet, to transfer to it one hundred of the one hundred and seventy-one shares of its capital stock formerly owned by the defendant's intestate, (2) to restrain the defendant from prosecuting a petition for a

writ of mandamus to compel the plaintiff to call the annual or a special meeting of its stockholders, (3) to restrain the defendant from voting any part of said one hundred and seventy-one shares of stock until the transfer to the plaintiff of said one hundred shares of such stock, and (4) to obtain other relief. The case was referred to a master. His report, to which no objections were taken, was confirmed by interlocutory decree. A final decree granting the essential relief prayed for was entered in favor of the plaintiff. The appeal of the defendant from both decrees brings the case here.

The plaintiff was incorporated in 1918 under the laws of this Commonwealth for the purpose of taking over the business of Albert E. Touchet conducted by him for many years. The amount of the authorized capital stock of the plaintiff was $25,000, divided into two hundred and fifty shares of the par value of one hundred dollars each. Restrictions were imposed upon the sale of shares, which were set forth in the agreement of association, in the by-laws, and in all share certificates. So far as here material they were in these words: "Any stockholder who shall be desirous of selling any of his shares, the executor or administrator of any deceased stockholder, and the grantee or assignee of any such shares sold on execution, shall cause such shares to be appraised by the directors which it shall be their duty to do on request, and shall thereupon offer the same to them for the use of the Corporation, at such appraised value; and if said directors shall determine to take such shares or any portion of them for the use of the Corporation, such stockholder, executor, administrator, or assignee shall upon the payment or tender to him of such appraised value thereof, and the dividends due thereon, transfer and assign such share or shares to said Corporation; provided, however, that the said directors shall not be obliged to take shares at the appraised value aforesaid, unless they think it for the interest of the Corporation." After certain provisions as to payment and option on the part of the directors not to purchase and conditional rights of stockholder to sell to anybody, not here pertinent, are these words: "It shall be the

duty of such stockholder, executor, administrator or assignee to offer said stock for appraisal and to be taken by the Corporation, if it so elect, whenever requested by the President or Treasurer so to do . . . provided that such request shall not be made until after the expiration of six months from the death of the owner, but the offer to the directors may be made at any earlier period if the party shall prefer. The appraisal of any shares so offered to the directors shall be made at the value as then shown by the books of the Corporation."

On the formation of the corporation all but two of the shares were issued to Albert E. Touchet, who subsequently, partly by gift and partly by sale, transferred some of his shares so that in August, 1925, and thereafter to the bringing of this bill he owned one hundred and seventy-one shares, George F. Crawford, long a faithful employee of himself and of the plaintiff, fifty-six shares, and Daniel J. Neville, likewise a faithful employee for a number of years, twenty-three shares. After the annual meeting of the corporation held March 31, 1925, these three were the directors, that being the number of directors fixed by vote of the corporation. Albert E. Touchet was president and treasurer; and Crawford, clerk and assistant treasurer. Albert E. Touchet resigned as president but not as director on November 4, 1925, and Crawford was elected in his place. Albert E. Touchet at various times made statements to different persons that he desired his business eventually to go to employees who had been with him for many years, or some of them. In 1920 he executed a will, which contained clauses providing for the effectuation of this purpose. This will was revoked in 1925. In the later years of his life he relied more and more upon trusted employees and was able to pay little or no personal attention to the business for some months before his death. He died intestate on January 27, 1926. The defendant was appointed administrator of his estate on April 15, 1926, but from this appeals were taken on May 5, 1926, which were waived on May 5, 1927. One of these was taken in behalf of the plaintiff and the other in behalf of John H. Devine and the Old Colony Trust Company as executors and trustees under the will of the intestate executed

in 1920 and revoked in 1925. J. Clinton Thompson was appointed special administrator of the estate of the intestate on June 29, 1926. Negotiations were held between the directors of the plaintiff and the defendant and their attorneys looking to the possible sale of the Touchet stock to the directors of the plaintiff, or the purchase of their stock by the Touchet estate. These came to naught and terminated about June 1, 1926.

The issues between the parties arise out of facts which came to pass after the death of Albert E. Touchet. The annual meeting of the stockholders of the plaintiff, according to its by-laws, was required to be held on the third Monday in March in each year for the election of the treasurer, clerk and a board of not less than three, nor more than five, directors. The last stockholders' meeting was held in March, 1925. No call was issued for the annual meeting in March, 1926. At that time the intestate had deceased and no representative of his estate had been appointed. It was provided by by-law of the plaintiff that at any meeting of the stockholders no business except to organize and adjourn for a specified time should be transacted unless there were present in person or by proxy stockholders representing at least one half of the shares. In view of this by-law, if the annual meeting had been called at the time designated by the by-law, manifestly no business could have been transacted. Under date of May 6, 1926, the defendant wrote to Crawford as the clerk of the plaintiff, notifying him of his appointment as administrator of the intestate's estate and asking him to call forthwith a stockholders' meeting for the purpose of electing directors and other officers. No answer was made to this letter and there was no compliance with the request. On the day before this notice, the appeals had been taken from the appointment of the defendant as administrator. On June 16, 1926, Crawford and Neville, the only surviving directors, held a meeting as the directors of the plaintiff and passed a vote directing the president of the plaintiff on the expiration of six months from the death of the intestate to make formal demand upon the representative of his estate to offer to the plaintiff the shares of stock for appraisal and

disposal in accordance with the by-law. On July 10, 1926, eleven days after his appointment as special administrator of the estate of the intestate, Thompson sent to Crawford as clerk a request to call a special meeting of the stockholders of the plaintiff to be held on July 20, 1926, for the purpose of electing directors and other officers. There was no compliance with this request. On July 31, 1926, Crawford as president and assistant treasurer of the plaintiff wrote to the special administrator a formal request for full and immediate compliance with all the requirements of the by-laws of the plaintiff respecting "restrictions on transfer of shares." This letter was not answered and there was no compliance with the request. On September 29, 1926, Crawford and Neville as directors of the plaintiff elected one Thayer a director to fill the vacancy caused by the death of the intestate, and they as such directors appraised the shares of the estate of the intestate at the value of $200 per share, voted that the corporation purchase one hundred of the one hundred and seventy-one shares of the estate of the intestate at $200 per share, and authorized the directors to notify the special administrator of this action and to tender him $20,000 in payment thereof, and empowered the president and treasurer to borrow the whole or any part of the necessary money and to make the payment of the $20,000. Notice of this action was sent forthwith to the special administrator. At this time the excess of the plaintiff's assets over its liabilities was much greater than $20,000, and the plaintiff could readily have paid that sum for the specified stock. Votes of a similar nature were passed at a meeting of Crawford, Neville and Thayer as directors held on May 10, 1927. Notice of this action and demand for the transfer of the stock was given to the defendant on May 13, 1927. The plaintiff then was able to pay $20,000 upon delivery of the stock. On the same May 13 the defendant sent notice of his appointment as administrator to the clerk of the plaintiff, together with a request to call a meeting of the stockholders for the election of officers. No reply was made to any of these communications and no action was taken in compliance with any of the requests or demands contained therein. The final finding

of the master was "that it was the desire and purpose of Crawford and Neville that no meeting of the stockholders should be held until they as directors had had an opportunity to purchase for the plaintiff the shares belonging to the estate of Albert E. Touchet, or a portion of them, under the provisions of the agreement of association and by-laws imposing restrictions on the transfer of shares, and thus to acquire for themselves a majority of the capital stock carrying control of the plaintiff corporation; that after the death of Albert E. Touchet Crawford and Neville always had it in mind that they were going to make a demand on the Touchet estate to transfer its stock or some of it to the plaintiff for their protection; that it was largely for that reason that Crawford as clerk and Neville as clerk took no action on the requests made to them that they should call a stockholders' meeting; that both Crawford and Neville believed and had reason to believe that if such a meeting were held the stock of the Albert E. Touchet estate would be voted for the election of officers and a board of directors who would oppose and vote against the purchase by the plaintiff of the stock of the plaintiff belonging to the Albert E. Touchet estate; that both the defendant and Thompson intended, if a stockholders' meeting were held, so to vote the Touchet stock; that they considered it important for the protection of the value of the Touchet stock that the interest of the estate therein should not be reduced to a minority interest; that it is now the purpose of the defendant not to comply with the demand that he offer the 100 shares of stock belonging to the estate of Albert E. Touchet or any portion of them to the plaintiff, and that he does not intend to part with any of those shares to the plaintiff, unless he is required to do so by the Court. I further find, if material, that the business of the plaintiff corporation since the death of Albert E. Touchet has been properly and skilfully conducted."

The validity and the binding force of the restrictions on the sale of shares of stock in the plaintiff are settled. They cannot be questioned either by the corporation or the stockholder. *New England Trust Co.* v. *Abbott,* 162 Mass. 148.

*Silversmiths Co.* v. *Reed & Barton Corp.* 199 Mass. 371.
*Longyear* v. *Hardman,* 219 Mass. 405.

The by-laws of the plaintiff provided that the president,
treasurer, clerk and directors shall hold "office for one year or
until their successors are chosen and qualified," and that a
majority of the board of directors should "constitute a
quorum for the transaction of business." Under these by-
laws Crawford and Neville continued to constitute the board
of directors and to possess the powers vested in directors,
after the death of Albert E. Touchet. This is the effect also
of G. L. c. 156, § 22, providing that directors and other officers
of a business corporation "shall hold office for one year and
until their successors are chosen and qualified." *Knowlton*
v. *Ackley,* 8 Cush. 93, 94. *Apsey* v. *Chattel Loan Co.* 216
Mass. 364, 367. *In re Sly, Spink & Co.* [1911] 2 Ch. 430.
*In re Scottish Petroleum Co.* 23 Ch. D. 413, 431, 438. It is
not necessary, in the view we take of the case, to determine
for how long a period this continuance in office may rightly
be held to subsist, or to discuss the differences between *de
jure* and *de facto* officers of a business corporation. For all
purposes of this decision Crawford and Neville continued to
be directors and officers of the plaintiff.

The directors of a business corporation have often been
called trustees. Without defining further the nature of their
relation to the corporation, it is plain that at least it is fiduci-
ary. The directors and officers are bound to act with reason-
able intelligence in the performance of the duties imposed
on them by the law. They must order their conduct so as
to place the performance of those duties above their purely
personal concerns. While they may not be held responsible
for mere errors of judgment or want of prudence, they cannot
rightly manipulate the affairs of the corporation primarily
with the design of securing the control of the corporation to
one particular group of stockholders, or of excluding another
group from the exercise of its corporate rights. *Elliott* v.
*Baker,* 194 Mass. 518, 523. *Hill* v. *Murphy,* 212 Mass. 1.
*Allen-Foster-Willett Co., petitioner,* 227 Mass. 551, 556. *Cos-
mopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 119, 120, and

cases collected. *Stratis* v. *Andreson,* 254 Mass. 536, 539. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448. *In re City Equitable Fire Ins. Co. Ltd.* [1925] Ch. 407, 426–430.

It was the duty of the directors of the plaintiff in the circumstances here disclosed to call a stockholders' meeting, in lieu of the annual meeting required under the by-laws to be held in March, as soon as practicable after there was some one legally capable of representing the stock of the intestate. By a by-law of the plaintiff special meetings of the stockholders were required to be held whenever "stockholders holding at least one half part in value of the capital stock shall make application therefor to the Clerk." The estate of the intestate was such a stockholder. The demand for a stockholders' meeting made by the defendant on May 6, 1926, may be regarded as nugatory. The appeal from his appointment was filed the day before, and the demand was not in strict conformity to the requirement of the by-law. The special administrator after his appointment made demand on July 10, 1926, adequate in form, on the clerk, who was also president and a director of the plaintiff, for a meeting of stockholders to be held on July 20, 1926. His powers as special administrator under G. L. c. 193, § 11, to preserve the personal property of the deceased for the executor or administrator when appointed, we think were broad enough to enable him rightly to make such demand, especially in view of G. L. c. 155, § 21, imposing upon such fiduciary the duty of representing the shares of his trust at meetings of a corporation and empowering him to vote as a stockholder. *Meagher* v. *Kimball,* 220 Mass. 32. *Purcell* v. *Purcell,* 233 Mass. 62. *Talbot* v. *Bush,* 251 Mass. 27.

The date of the meeting designated in the demand of the special administrator was nine days before the time when the plaintiff under the by-law could request the appraisal of the stock of the intestate. That could not be done until the expiration of six months from his death.

It is plain under the by-law already quoted as to the quorum of stockholders that no effective meeting of the stockholders could have been held until after the appointment of an administrator or special administrator to represent the

estate of the intestate. The delay in calling a meeting of the stockholders between the appointment of the defendant as administrator on April 15, 1926, and the appeals from that appointment on May 5, 1926, may be excused by reason of the negotiations between the parties for the control of the plaintiff. But there is no excuse apparent on the record for the delay after the demand of the special administrator on July 10. Negotiations had then ended. Of course it was natural for the directors of the plaintiff to desire to acquire the controlling interest in the stock of the plaintiff in conformity to the desire of the intestate expressed during his life. But he had deliberately chosen not to leave any testamentary provision to that end. There is nothing to indicate an intent on his part to surrender the rights of his estate as the holder of the majority of the stock to exercise its normal control over the affairs of the plaintiff. There are upon the record no facts which excuse the plaintiff through its proper officers from calling a meeting of the stockholders after July 10, 1926.

The by-law having stated that the directors and other specified officers of the plaintiff should be chosen annually, there must be compliance with that mandate. The stockholders constitute the governing power of the corporation. Provision that there shall be a meeting every year for the election of officers confers upon the stockholders a valuable right, of which they cannot be deprived by corporate officers. The general policy of a corporation within the limits of law is determined by the majority of the stockholders having voting power. *Opinion of the Justices,* 261 Mass. 556, 596, 597. This cannot be accomplished unless meetings of the stockholders are called as prescribed. It was said by the Court of Errors and Appeals in *Camden & Atlantic Railroad* v. *Elkins,* 10 Stew. (N. J.) 273, 276, "The right to hold elections for the directors of a corporation, and to vote at such elections, is a right that is inherent in the ownership of stock; and a stockholder who appears by the books to be such cannot be deprived of these rights upon the allegation that he proposes to use his legal rights for purposes which others may think to be detrimental to the interests of the corpo-

ration." This rule prevails generally. It is inherent in the nature of corporate organizations and is the basis for safety of investment in shares of stock in corporations.

The plaintiff, if otherwise entitled, could not enforce its rights under the purchase clause of the by-law against the special administrator, and must await the appointment of an administrator. *Albert E. Touchet, Inc.* v. *Thompson,* 259 Mass. 220. Manifestly, to delay calling a stockholders' meeting for that length of time in the case at bar would be unjustifiable. *Chelmsford Co.* v. *Demarest,* 7 Gray, 1, 4. *Pender* v. *Lushington,* 6 Ch. D. 70. *Walsh* v. *State,* 199 Ala. 123, and cases collected. *People* v. *Cummings,* 72 N. Y. 433, 436. *Mottu* v. *Primrose,* 23 Md. 482, 499, 500. *Luther* v. *C. J. Luther Co.* 118 Wis. 112, 123, 124.

The right of the plaintiff under the purchase clause as between itself and the stockholders was contractual. The terms of the contract are found in the by-laws of the corporation, in the certificates of stock, and in the provisions of the statute under which the corporation was organized and has continued to exist and function. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 533.

The plaintiff has failed to perform the terms of that contract. It has refused to give to the estate of the intestate the voice in the management of corporate affairs to which under the law it is entitled. It has timed that denial of rights so that the estate of the intestate has been deprived of the opportunity, which its representatives desired to exercise and which its financial investment would have enabled it to exercise, of controlling the corporate management. This breach of contract on the part of the plaintiff is not as to an incidental or subsidiary matter, but as to a matter reaching to the vitals of corporate regulation.

A majority of the court are of opinion that the plaintiff has so failed in the performance of its part of the contract between itself and the estate of the intestate that it is not entitled to maintain this suit. While there is no authority precisely in point, the principles declared in numerous cases support the conclusion. *Thaxter* v. *Sprague,* 159 Mass. 397. *Sullings* v. *Sullings,* 9 Allen, 234. *Rutland Marble Co.* v. *Ripley,* 10 Wall.

339, 357, 358. *Grubb Brothers* v. *Moore, Clemens & Co.* 108 Va. 72, 83. *Lamare* v. *Dixon*, L. R. 6 H. L. 414, 423, 428. *General Billposting Co. Ltd.* v. *Atkinson*, [1909] A. C. 118. *Measures Bros. Ltd.* v. *Measures*, [1910] 2 Ch. 248.

> *Interlocutory decree affirmed.*
> *Final decree reversed.*
> *Final decree to be entered dismissing bill.*