34 N.J. Super. 373 (1955)
112 A.2d 302
PENN-TEXAS CORPORATION, A PENNSYLVANIA CORPORATION, ET AL., PLAINTIFFS,
v.
NILES-BEMENT-POND COMPANY, A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS, BERNARD SMITH, ET AL., INTERVENORS.
Superior Court of New Jersey, Chancery Division.
Decided March 8, 1955.
*374 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig appearing), attorneys for plaintiffs.
Messrs. Stryker, Tams & Horner (Mr. Josiah Stryker appearing), attorneys for defendant Niles-Bement-Pond Company.
Messrs. Pitney, Hardin & Ward, attorneys for defendant The Corporation Trust Company.
*375 Messrs. Crummy, Consodine & Gibbons (Mr. Andrew B. Crummy appearing), attorneys for intervenors.
SULLIVAN, J.S.C.
The present application before me involves but one facet of a stockholders' suit against Niles-Bement-Pond Company, a corporation of this State hereinafter called the defendant. Originally the suit was filed by a plaintiff, who claimed to be a large stockholder of the defendant, objecting to a contract entered into by the defendant with Belco General Corporation, whereby the defendant agreed to issue 631,715 shares of its authorized but unissued stock in exchange for a large block of stock of Bell Aircraft Corp. as well as the payment of a cash differential. The contract was never submitted to the stockholders for approval. Plaintiff not only charged that the directors of the defendant had no power to authorize such a contract but also alleged a corrupt motive and an attempt by the directors to "water" the outstanding stock and thereby dilute and weaken the plaintiff's percentage of control and ownership and at the same time issue a controlling block of stock to a faction that would vote to keep the present directors in office. After the filing of the complaint a number of other stockholders were permitted to intervene as co-plaintiffs. On proper application, the defendant was enjoined from carrying out the terms of said contract pending a final hearing on the charges made and issues raised by plaintiffs. The contract called for performance on March 1, 1955. When the defendant failed to carry out its obligations under said contract, the other party to the contract, by letter dated March 1, 1955 terminated the agreement, citing the defendant's failure to perform as the reason. This part of the case therefore has recently become moot.
On February 18, 1955 plaintiffs made an application for additional relief in this same cause and allegedly arising out of the same situation. It is this latter part of the case that is before me now. In it the plaintiffs show that at the same meeting on January 11, 1955 at which the aforesaid contract *376 was authorized, the board of directors of the defendant also amended the corporate by-laws by changing the date of the annual meeting of stockholders from the first Wednesday after the first Monday in April in each year to the Wednesday after the second Monday in May in each year.
Plaintiffs charge that the directors have no power to postpone the date of the annual meeting of stockholders, particularly where it results in an extension of the directors' own terms of office. Numerous items of relief are sought, the substance of which is to have the new meeting date set aside and the original date reestablished.
The defendant is organized under the Corporation Act of this State, R.S. 14:1-1 et seq. Several of the provisions of said act are pertinent to this inquiry and are as follows:
R.S. 14:7-1. "The business of every corporation shall be managed by its board of directors, not less than three in number. Directors shall be chosen annually by the stockholders, at the time and place provided in the by-laws, and shall hold office for one year and until others are chosen and qualified in their stead."
R.S. 14:7-3 permits a corporation to establish a board with classes of directors having staggered terms of office up to five years, provided that the term of at least one class expires in each year. The defendant has not availed itself of R.S. 14:7-3, and all of its directors are elected annually for a term of one year pursuant to R.S. 14:7-1.
The act, insofar as it relates to the power to make or alter by-laws, says this:
R.S. 14:3-2. "The power to make and alter by-laws shall be in the stockholders, but any corporation may, in the certificate of incorporation, confer that power upon the directors. By-laws made by the directors under power so conferred may be altered or repealed by the stockholders."
The defendant has availed itself of this provision and its charter in paragraph Seventh provides inter alia that "The Board of Directors shall have the power, without the assent or vote of the stockholders, to make, alter, amend and rescind *377 the By-laws of this Corporation." The by-laws themselves confirm this power in the directors by providing in Article XII: "These By-Laws may be amended, altered, or repealed by the Board of Directors without the consent or vote of the stockholders."
Briefly stated, therefore, the question is, may the directors amend the by-laws so as to postpone the date of the annual meeting of stockholders? Plaintiffs say that the directors do not have the power to postpone such annual meeting date whether by amending the by-laws or otherwise, because by doing so they disregard the mandate for annual elections and also necessarily extend their term of office beyond that for which they were elected, both in violation of the statutory provisions of R.S. 14:7-1, supra.
The defendant argues that its directors have the power to amend the by-laws and therefore may, in the exercise of their sound discretion and good judgment, change the date of the annual meeting of stockholders even though it results in an extension of the term of office beyond a year. It is pointed out that R.S. 14:7-1 provides that directors "shall hold office for one year and until others are chosen and qualified in their stead." (Italics supplied.)
The defendant in support of its position has shown that for years it has been its custom to mail to each of its stockholders at approximately the same date as the mailing of the notice of the annual meeting of its stockholders, a report of its operations for the preceding year, including certain audited financial statements. Ordinarily the auditors' report was available not later than the third week in February, so that up till now it was possible for the defendant to have its annual report ready at the time the notices for the April meeting were sent out. In early 1955 the accountants notified the president of the defendant that the audit covering 1954 would probably be delayed for several reasons. A formal letter from the auditors setting forth the reasons for delaying the completion of the audit was sent to the defendant on January 10, 1955. The minutes of the January 11, 1955 *378 directors' meeting recite that the auditors asked for more time "to get out the annual report" and that the chairman recommended that the date of the annual meeting of stockholders be postponed because of such request. The challenged resolution changing the meeting date from April to May was thereupon adopted. Because of the foregoing the defendant argues that the action of its board was taken in the exercise of sound judgment with an honest purpose and was for the benefit of all of the stockholders who could not intelligently vote at an annual election if they had not had an opportunity to inspect the corporation's annual report for the preceding year.
In considering the question involved this court has not concerned itself with the proposition of whether the directors have used good or bad judgment in this matter. Ordinarily, if directors have the power to act, a court will not interfere with nor review the exercise of their judgment unless fraud, self-dealing or unconscionable conduct is shown. In the matter before me, while plaintiffs suggest that the board of directors has acted in bad faith and postponed the annual meeting date in order to fortify its position in the coming election, the record before the court is sufficient to justify the action taken by the board provided it had the power to act. The issue, therefore, is one of law and not of fact.
It is fundamental that the corporate structure must be established and managed in conformity with the provisions of the Corporation Act. A by-law or an amendment to a by-law which is repugnant to any part of our Corporation Act is illegal and void. No citation of authority is needed to support this basic principle. Granted, therefore, the unquestioned power of the board of directors of the defendant, generally speaking, to amend the by-laws, I conclude that the board has no power to change or postpone the date of the annual meeting of stockholders.
Our Corporation Act, R.S. 14:7-1, supra, says that directors "shall be chosen annually by the stockholders, * * * and shall hold office for one year * * *." In the *379 present situation the directors have attempted to set the next annual stockholders meeting and election for a date some 13 months and 4 days subsequent to the last annual meeting. Obviously the attempted change disregards the mandate for annual elections. Another effect of the directors' act is to lengthen their own term of office to 13 months and 4 days despite the fact that the statute says, and they were elected for, a term of one year. Similar action by a board of directors has been struck down by the courts of this State. In the case of Elkins v. Camden & Atlantic Railroad Co., 36 N.J. Eq. 467 (Ch. 1883), appeal dismissed sub nom. Camden & Atlantic Railroad Co. v. Elkins, 37 N.J. Eq. 273 (E. & A. 1883), the precise point involved herein was ruled on by Vice-Chancellor Van Fleet as follows in 36 N.J. Eq., at page 469:
"* * * The right, therefore, to change the day for the annual meeting is one which, from its very nature, can alone be exercised by the stockholders. No board of directors can, without the stockholders' consent, hold office for a period longer than one year."
In the above case the corporate charter provided that annual meetings of the stockholders should be held for the election of directors. Conforming to the above requirement, the by-laws fixed an annual meeting date. In October of 1882 the board of directors, by a resolution amending the by-laws, attempted to change the time of the annual stockholders' meeting from the fourth Thursday of February to the fourth Thursday of October. A bill was immediately filed by a stockholder seeking an injunction to restrain the directors from changing the date of the meeting and forbidding the attempted postponement of the election of directors. Vice-Chancellor Van Fleet granted the relief sought and enjoined the directors from changing the meeting date, saying at pages 468-469 of 36 N.J. Eq.:
"The effect of the change, it will be perceived, is to increase the term of office of the persons who attempted to make it, from one year to one year and eight months, nearly double the period for which *380 they were elected. And this they have attempted to do without the consent of the proprietors of the corporation, except so far as they may happen to be represented by the persons constituting the board of directors. If they may lawfully do what they have attempted, it is difficult to perceive why they may not a month, more or less, before the day now fixed, make another change, and so continue changing the day from time to time, as long as they may find it agreeable to continue in office, and thus absolutely deprive the proprietors of the corporation of that provision of the charter which secures to them the right to designate annually the persons who shall manage the affairs of the corporation. That provision of the charter which declares that annual meetings of the stockholders shall be held for the election of directors, grants to the stockholders a highly important and valuable right, which the directors can neither defeat nor impair. It gives the stockholders the right to say, once in each year, not once in eighteen months, or two years, by a vote of a majority of shares, who shall be elected directors, and as such have the conduct and management of the business of the corporation for the next year. The right, therefore, to change the day for the annual meeting is one which, from its very nature, can alone be exercised by the stockholders. No board of directors can, without the stockholders' consent, hold office for a period longer than one year."
This opinion has been cited widely. It is apparently the leading case in the United States on the point involved and the principle it enunciates has been uniformly followed.
In Albert E. Touchet, Inc., v. Touchet, 264 Mass. 499, 163 N.E. 184 (Mass. Sup. Jud. Ct. 1928), the court said that the requirement that directors be chosen annually is a mandate that must be complied with, citing the Elkins case, supra, and quoting from its opinion. Immediately after the quotation the court added, 163 N.E., at page 188:
"This rule prevails generally. It is inherent in the nature of corporate organizations and is the basis for safety of investment in shares of stock in corporations."
Similarly, in People ex rel. Miller v. Cummings, 72 N.Y. 433 (Ct. App. 1878), the court in ordering the holding of a corporate election said, at page 436:
"If trustees could keep themselves in office by not having an annual election, the stockholders would be powerless and they might perpetuate *381 themselves in power as long as they chose. Such a course would also be in direct opposition to the mandatory provision requiring that trustees to be annually elected shall manage the affairs of the company."
In 13 Am. Jur. § 473, page 515, the following quotation appears:
"* * * It is well settled, however, that where the date for the regular meeting of the stockholders is fixed by the charter or bylaws, the directors have no power to change the time unless the stockholders acquiesce, particularly where the effect of the change is to postpone an election of directors."
An annotation on the point in 2 A.L.R. 558 uses almost the identical language in enunciating the same general rule. See also Nathan v. Tompkins, 82 Ala. 437, 2 So. 747 (Sup. Ct. 1886); Walsh v. State ex rel. Cook, 199 Ala. 123, 74 So. 45, 2 A.L.R. 551 (Ala. Sup. Ct. 1917); Mottu v. Primrose, 23 Md. 482 (1865); Gries v. Eversharp, Inc., 31 Del. Ch. 489, 69 A.2d 922 (Del. Sup. Ct. 1949).
The foregoing authorities establish the proposition that a statutory provision for annual elections of directors is a mandate that must be strictly obeyed and that directors have no power to change that mandate nor extend their own terms of office by postponing the date of the annual meeting of stockholders. The rule is a salutary one. No one would argue that an elected public official should be permitted to extend his own term of office. The same reasoning applies to a corporate director who is also an elected official and a servant of the corporate electorate. It would be against public policy to vest in the directors the power to continue themselves in office beyond their statutory term of office. The legislative purpose in requiring annual elections of directors is for the protection not only of the stockholders but also of the corporation's creditors and the public who deal with it, so that if the corporation's affairs are not being properly administered by its directors, they may be replaced at the end of their term.
*382 In the present case if the annual report is not ready for distribution in time for the April 6 meeting, the situation should be presented to the stockholders at that meeting. They can then decide for themselves whether they want to adjourn the meeting until the report is available. The decision, however, is one for the stockholders to make rather than the directors.
As an additional reason for denying any relief the defendant urges that the plaintiffs have not shown special damage sufficient to warrant the issuance of an injunction. This argument is without merit. Plaintiffs have shown that the directors' action, if allowed to stand, would deprive them of certain voting rights. This of itself is sufficient to invoke intervention by this court. Vice-Chancellor Van Fleet in the Elkins case, supra, has this to say about voting rights, at page 469 of 36 N.J. Eq.:
"* * * That provision of the charter which declares that annual meetings of the stockholders shall be held for the election of directors, grants to the stockholders a highly important and valuable right, which the directors can neither defeat nor impair."
Likewise in the Touchet case, supra, the court said in 163 N.E., at page 188:
"* * * Provision that there shall be a meeting every year for the election of officers confers upon the stockholders a valuable right, of which they cannot be deprived by corporate officers."
In the case of Faunce v. Boost Co., 15 N.J. Super. 534, at page 539 (Ch. 1951), the court in speaking of a stockholder's voting rights said:
"The right to vote was a basic contractual right. It was an incident to membership or of the property in the stock, of which the stockholder or member cannot be deprived without his consent."
Plaintiffs therefore are not required to show some special damage to themselves growing out of the interference with *383 their voting rights. The infringement on their right to vote is of itself sufficient damage to invoke the aid of this court.
The defendant has also questioned the right of some of the plaintiffs to maintain this action on the ground that they are not registered on the books of the defendant as the owners of any of its stock. It is not necessary for the court to decide whether these parties are actually the beneficial owners of stock as they allege. The defendant concedes that some of the plaintiffs are the registered owners of its stock so that there is jurisdiction to hear the suit.
The relief sought by plaintiffs will be granted in its entirety.