[No. 27508. Department Two. April 20, 1939.]

THE STATE OF WASHINGTON, *on the Relation of J. F. Lidral, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *James B. Kinne, Judge, Respondent.*[1]

*Frank E. Hammond* and *Rummens & Griffin,* for relator.

*McMicken, Rupp & Schweppe, T. M. Royce, Philip Tworoger,* and *Ben A. Maslan,* for respondent.

GERAGHTY, J.—This is an original application for a writ, directed to the superior court of King county,

[1]Reported in 89 P. (2d) 501.

Honorable James B. Kinne, judge, prohibiting that court from entering judgment in a pending cause.

That action was one in the nature of *quo warranto*, instituted on the relation of Charles A. Budde, H. R. Macfadden, and George E. Moon, plaintiffs, against Frank E. Hammond, Harry W. Cameron, A. B. Cornelius, George R. Heap, and Northeast Transportation Company, defendants, to determine who were the duly elected directors of the defendant corporation in accordance with the votes cast by the stockholders at their annual meeting held January 31, 1939.

The respondent, in its return to the show cause order issued herein, sets out the facts which it finds to be established by the evidence in the *quo warranto* proceeding tried to it. We shall refer to such of the facts found in the return as we deem material to the issues in the present action.

The Northeast Transportation Company (hereinafter referred to as the company) is a corporation conducting a motor bus passenger service over a route designated in a certificate of public convenience and necessity issued to it by the department of public service of the state of Washington. Its nominal capital is five thousand dollars, represented by five hundred shares, each of the par value of ten dollars. The stock was subscribed by some 262 shareholders. The subscription agreement provided for payment of ten per cent of the subscription at the time of signing, and payment of the balance in installments as called by the directors of the company.

The return recites that the three plaintiffs in the *quo warranto* action are stockholders of the company, and were duly elected directors at the annual election held January 31, 1939; that R. C. Johnson, owner of one share of stock, was present at that election and held proxies of subscribers for 234 shares, authorizing him

to vote in their behalf. He voted the shares for the election of Budde, Macfadden, and Moon; and other subscribers of stock, holding 33 shares, were present in person and, likewise, voted the stock represented by them for the three named. The acting officers having charge of the stockholders' meeting allowed Johnson to vote only the one share of stock owned by him and 71 shares of the 234 for which he held proxies.

On December 1, 1937, George R. Heap, D. M. Hinman, Harry W. Cameron, and L. C. Perrott, purporting to act as the board of directors of the company, adopted a resolution cancelling all of the stock subscriptions of the subscribers who had not paid installments upon their stock, and thereafter, in pursuance of the resolution, declared the subscriptions to 208 shares cancelled. The purported cancellation was illegal and void in several particulars. No call for the payment of any assessment upon the stock subscription had been given to the subscribers, nor any notice of the intention of the board of directors to cancel the subscriptions; the shares were not sold at public auction after giving notice to the subscribers of the time, place, and terms of sale by registered mail; the by-laws of the company do not authorize the directors to cancel stock subscriptions for nonpayment of assessments, and no provision is made for the sale of shares for nonpayment. The board of directors, at a meeting on December 1, 1937, designated three of its members as a so-called executive committee of the board to manage the company's business during the interim between regular meetings.

Frank E. Hammond, one of the defendants in the *quo warranto* proceeding, who had been appointed general manager of the company, purported, sometime prior to December 20, 1937, to have sold, under instructions of the executive committee, to the relator, J. F. Lidral, 176 of the 208 shares the subscriptions for which had

been cancelled. On December 20, 1937, the executive committee ratified the sale, and thereafter, prior to the meeting of January 31, 1938, Cameron, Heap, and Perrott, purporting to act as a board of directors, by resolution approved the sale of the 176 shares of stock to Lidral.

At the meeting of January 31, 1939, the defendant Frank E. Hammond, presenting the proxy of Lidral, asserted a right to vote the 176 shares of stock claimed to have been sold to Lidral, and thereupon the acting officers of the company, over the protest of the plaintiffs, wrongfully recognized the right of Hammond to vote the shares, and recorded them in favor of the defendants Hammond, Heap, Cornelius, and Cameron, as directors. The officers of the company erroneously declared that Hammond, Heap, Cornelius, Cameron, and Budde had been elected, whereas, if the vote cast by the Johnson group had been received and counted, the plaintiffs Budde, Macfadden, and Moon, and the defendants Hammond and Cornelius would have been elected. The stockholders cast multiple votes at the election, as permitted by statute, so that, in any event, a minority faction would have representation on the board.

The return makes reference to two actions, involving substantially the same parties and issues, instituted in the superior court of King county, growing out of the election of directors at the annual meeting held January 31, 1938. In these actions, the court found that the purported sale of 176 shares to Lidral was void, and that the votes and proxies of the original stock subscribers should have been counted at the 1938 election. The return recites that,

"In each of said actions the court entered its decree on the 23rd day of December, 1938, decreeing that the persons for whom the stock of said original stock sub-

scribers had been cast as directors of said company at the election in 1938, were elected and that said findings so made by the court were necessary to sustain the decrees in said actions. . . .; that the facts so found in said suits and the right of the original stock subscribers to vote said stock so subscribed for by them, and the fact that the said J. F. Lidral did not have the right to vote the stock at stockholders' meetings is res adjudicata in this case."

The return shows that Lidral was not a party to either of the suits involving the 1938 election; neither is he made a party to the pending *quo warranto* proceeding involving the 1939 election.

The return concludes by stating that, in the court's opinion, it should be adjudged that the plaintiffs Budde, Macfadden, and Moon, and the defendants Hammond and Cornelius were the elected directors of the corporation at the meeting held on January 31, 1939, and that the writ of *quo warranto* should issue ousting George R. Heap and Harry W. Cameron from the board.

In the affidavit supporting the application for the writ, Mr. Frank E. Hammond, the relator's attorney, alleges that the relator, Lidral, paid the company $704 for the 176 shares of stock purchased by him, which, it will be seen, was four dollars a share, or the amount due upon the stock under the call of the directors. The return makes no reference to the relator's payment, and it is to be assumed that, since the fact is not negatived by the return, the stated price was paid.

It will be seen that the issue in the *quo warranto* proceeding hinged upon the ownership of the 176 shares of stock claimed to have been purchased by the relator. If the relator had the right to vote the stock by his proxy, Hammond, the legally elected directors would be Hammond, Cornelius, Cameron, Heap, and Budde. On the other hand, if, as found by the court, the cancellation of the original subscriptions and subsequent

sale to relator was void and ineffective, the duly elected board would be Budde, Macfadden, Moon, Hammond, and Cornelius; and Heap and Cameron would be intruders.

The controlling question is whether, in the light of the facts set forth in the return, the court would be proceeding in excess of its jurisdiction by the entry of a judgment in accordance with its announced conclusions. The relator is not a party to that proceeding, and he contends that, in his absence, the court is without jurisdiction to adjudicate his ownership of the stock or his right to have his shares voted and counted at the election for directors.

The right to participate in the election of the governing board of a corporation is one of the most important rights incident to stock ownership. The respondent, however, contends that, in a proceeding to test title to the office of director, the question to be determined is the mere right to vote stock as distinguished from the right to own and hold it, citing *Standard Scale & Supply Corp. v. Chappel,* 16 Del. Ch. 331, 141 Atl. 191, and *Italo Petroleum Corp. v. Producers Oil Corp.,* 20 Del. Ch. 283, 174 Atl. 276, as authority in support of its position. These are Delaware cases, and are based upon the organic corporation act of that state.

In *Standard Scale & Supply Corp. v. Chappel,* the right of one Williamson to vote shares of stock at a corporate meeting for the selection of directors, was in question. The right to vote the stock was challenged on two grounds: (1) That the stock had not been registered in the name of Williamson for the requisite period; and (2) that it was illegally issued for an inadequate consideration for the express purpose of gaining control of the election. In the course of its opinion, the court said:

"We agree with the Chancellor that the legality of the issuance of the Williamson stock—that, is the right of Williamson to own or hold such stock as distinguished from the mere right to vote the stock—could not properly be passed upon in a proceeding to review a corporate election to which proceeding Williamson was not a party.

"The suggestion, however, that the right of Williamson to vote the 45 shares issued within twenty days of the election cannot be considered, because Williamson is not a party, is a very different question and must now be briefly considered. The *Act of March* 14, 1923 (33 *Del. Laws, c.* 104) conferred on the Chancellor the undoubted right to determine the validity of the election of corporate directors. . . . The statute provides how the petition shall be served, and if any doubt existed under the *Act of* 1923 as to the authority of the Chancellor to determine the right to vote at any stockholders' meeting, such doubt must be dissolved upon consideration of an amendment to such act. On March 2, 1927, the *Act of* 1923 was re-enacted with the sole addition of the following language:

" 'The Chancellor in any proceeding instituted under this section shall have power to determine the right and power of persons claiming to own stock, to vote at any meeting of the stockholders authorized by or referred to in this section.' "

In this state, we have no statute similar to the Delaware law. Here, while the courts may, by a proceeding in the nature of *quo warranto,* inquire into the right of persons assuming to exercise corporate office, in doing so, they must proceed in accordance with well-recognized principles of law.

In 14 C. J. 898, § 1383, it is said:

"In the absence of statutory, charter, or by-law restrictions which are not in conflict with charter or general statutes, the right to vote at a stockholders' meeting is an incident of ownership of stock, and to deprive a stockholder of the right to vote is to deprive him of an essential attribute of his property, which is ordinarily not permissible."

In *Taylor & Co. v. Southern Pac. Co.,* 122 Fed. 147, 152, an application was made for an interlocutory injunction to restrain the voting at a stockholders' meeting of shares of Southern Pacific stock alleged to be owned by the Union Pacific Railroad Company. Judge Lurton, in passing upon the motion, said:

"The direct effect of any such decree, upon any of the theories upon which I am asked to act, would be to deprive the Union Pacific Railroad Company of one of the most valuable of the incidents of its ownership of its Southern Pacific shares—the right to vote for managing directors at a meeting of stockholders. It is, therefore, according to every definition, an indispensable party to any bill which challenges its right to own or vote upon its Southern Pacific shares. It must be accepted as altogether fundamental that no court can adjudicate upon the rights or interest of one who is neither actually nor constructively before the court. The principle of due process of law unconditionally compels observance of the rule which limits the just jurisdiction of every court to a determination only of the rights of persons who are parties to the litigation."

In *Mannington v. Hocking Valley R. Co.,* 183 Fed. 133, 147, where the legal status of a board of directors was involved, the court said:

"The restraining order was granted on the theory that, as in Ohio one railroad corporation cannot purchase and own the stock of a competing company, the defendant's board of directors is illegally constituted because about 70,000 shares of its common stock, now held by the Chesapeake & Ohio Railway Company, were illegally voted at the last annual election of directors, and that, when resignations occurred in the board, the vacancies were filled by persons interested in and friendly to that road, whereby it was given the domination and control of the defendant. . . . As the Chesapeake Company is not a party to this suit, the court may not now adjudge its stockholdings in the defendant unlawful, or the defendant's board of directors illegally constituted."

The respondent contends that there is no showing in the relator's petition that he made any attempt to be heard in the court below, in spite of the fact that he had full knowledge of the pendency of the *quo warranto* proceedings, and that his agent and proxy holder, and attorney in this action, Frank E. Hammond, is one of the defendants in the proceeding below.

We do not think the relator's rights are concluded by these facts. The proxy held by Hammond clothed him with a limited agency only to vote relator's stock at the meeting. The fact that Hammond is attorney for the relator in the present action and the two actions resulting from the 1938 election, cannot be said to estop the relator.

Neither do we think his failure to voluntarily intervene in the *quo warranto* proceeding a bar to his right to relief in the present action. The burden was upon the plaintiffs to bring him before the court as a party when seeking an adjudication of his claim to ownership of the stock.

As he was not a party to the two actions involving the 1938 election, the judgments in those cases were not *res judicata*.

We conclude that the writ should issue, and it is accordingly so ordered.

BLAKE, C. J., STEINERT, SIMPSON, and JEFFERS, JJ., concur.