[Nos. 27614, 27615.   Department One.   November 15, 1939.]

THE STATE OF WASHINGTON, *on the Relation of R. C. Johnson et al., Respondents,* v. GEORGE R. HEAP *et al., Appellants.*

THE STATE OF WASHINGTON, *on the Relation of George Moon, Respondent,* v. GEORGE R. HEAP *et al., Appellants.*[1]

[1]Reported in 95 P. (2d) 1039.

*Rummens & Griffin* and *Frank E. Hammond,* for appellants.

SIMPSON, J.—These actions are in the nature of *quo warranto.* They involve the same facts and were consolidated for the purpose of trial in the superior court. The findings are identical. We consider them together for the purpose of decision. There being no statement of facts, the appeal involves the application of law to the facts as found by the superior court.

The findings of fact may be summarized as follows: The Northeast Transportation Company is a corporation engaged in motor bus passenger service in the city of Seattle, holding certificate No. 471 issued by the department of public service. The company was organized July 2, 1926, with a capital stock of five hundred shares of the par value of ten dollars per share. The stock was subscribed by two hundred and sixty-two individuals, who subscribed from one to ten shares each. Many of the subscribers neglected to pay for their stock, as required by the subscription contract and resolutions of the board of directors.

In December, 1937, the directors of the company, after purporting to cancel the original subscription, attempted to sell and transfer the shares for which payment had not been made. The findings of the court concerning the sale of the unpaid stock recites:

"XXV. That some of the subscribers never paid any of the original 10% which in the subscription agreement they had agreed to pay; that many others failed to pay the said 30% so called for.

"XXVI. That no affirmative action was ever thereafter taken by the directors of the corporation or the subscribers attempting to cancel the subscription agreement, prior to the 1st day of December, 1937, except that on the 17th day of February, 1937, a resolution was passed by the board of directors directing the Secretary to notify the subscribers to pay their de-

318

linquent payments, or the stock would be sold to satisfy the lien of the company. This notice was not sent to the subscribers.

"XXVII. That on the 1st day of December, 1937, at a regular meeting of the Board of Directors at which all were present the following resolution was adopted, all voting for the resolution, except W. C. Mittan;—

" 'WHEREAS, there are many persons who have failed to comply with the terms of their subscriptions to stock in the Northeast Transportation Company and have failed to pay the amounts due on account thereof,

" 'Now, THEREFORE, It Is RESOLVED, that all persons who have not paid the 1st assessment of 10% or the 2nd assessment of 30% due on account of their stock subscriptions in the Northeast Transportation Company amounting to 40% of the par value of the stock subscribed for, be and they are hereby declared to be in default, and be it further RESOLVED, that the subscription contract of all subscribers to said stock who have not paid said assessments in full be and the said subscription contract of each of said persons is hereby rescinded, cancelled and held for naught.'

and upon said date the officers or agents of the corporation attempted to cancel the subscriptions of delinquent subscribers so entered upon its books (Exhibit 11) by drawing a line through the name of the subscriber and writing thereon opposite such name the word 'cancelled' and the date thereof, to-wit: December 1, 1937. This attempted cancellation pertained to all subscribers who had not paid the original 10% according to their subscription agreement, and in addition thereto, all those who had not complied with the call for 30%; and thereafter none of the subscribers whose names were so stricken from the book were recognized by the defendants as subscribers or as having any interest in said corporation or right to any shares of stock therein.

"XXVIII. That thereafter on December 8th, 1937, the Executive Committee authorized the sale of 176 shares of its stock so attempted to be cancelled and thereafter upon the 20th day of December, 1937, the said Executive Committee of said corporation adopted

the following resolution [omitting the names of the listed subscribers]:—

" 'RESOLVED, that the sale of 176 shares of the capital stock of the Northeast Transportation Company to J. F. Lidral for the sum of $704.00 be and the same is hereby ratified and approved and that it be and it is hereby ordered that the name of J. F. Lidral be entered upon the books of the company as the owner of the following described shares of stock, the subscriptions to which were cancelled by the Board of Directors on Dec. 1, 1937:' That in complying with and carrying out the said transaction with the said Lidral the said Lidral paid to the corporation in cash the sum of $704.00 and upon the book of said corporation containing the list of subscribers was then entered the words— 'Transferred to J. F. Lidral'—after the names of the said subscribers whose subscription the corporation purported to cancel and which the directors purported to sell to said Lidral, and, thereafter, up to and including the time of the trial of this action, said transaction remained such upon the books of the corporation, which books thereafter showed 176 shares to be standing in the name of J. F. Lidral; that on January 26, 1938, the Board of Directors purported to approve the sale of 176 shares to said Lidral."

At the annual meeting of the stockholders, January 31, 1938, held for the purpose of electing directors, R. C. Johnson, owning one share of stock, attempted to vote, by proxy, stock that had been ordered canceled by the board of directors. The board of directors refused to allow Johnson to vote those shares, but did allow the 176 shares to be voted by persons holding the proxy of J. F. Lidral. The court's findings relative to the election are as follows:

"IX. That at the time of said meeting the relator R. C. Johnson was, and now is the subscriber to one share of stock in said company and was personally present at said meeting, and also presented at said meeting valid proxies of subscribers of 150 shares of stock in said company authorizing him to vote said

stock in their behalf at said meeting; and that at said meeting said Johnson voted said shares for the election of said Mittan, Moon and Yeaman as directors, and that fifty-five other subscribers to the stock in said company were present either in person or by proxy, and likewise voted all of said shares of said stock represented by them for the election of said Mittan, Moon and Yeaman:   .   .   .

"XIX. That the acting officers of said corporation erroneously declared that the board of directors of said corporation elected at said annual meeting were the defendants, Heap, Hinman, Cameron and Perrott, and that the fifth member of the board is the said W. C. Mittan, whereas, if the votes cast by the said Johnson and his supporters had been received and counted, the said W. C. Mittan, George E. Moon and the late Ralph Yeaman and the defendants George R. Heap and L. C. Perrott would have been elected directors of said corporation.   That there was voted at said meeting 205 shares of stock in favor of the said W. C. Mittan, George E. Moon and Ralph Yeaman, and 135 shares of stock in favor of George R. Heap, L. C. Perrott, D. M. Hinman and H. W. Cameron; that said shares were voted under the multiple voting system, by multiplying the number of candidates by the number of shares, and dividing the number of votes among the candidates voted for, so that if the votes of the purported cancelled subscriptions had been counted and the shares purported to have been sold to J. F. Lidral had not been counted, the candidates would have received the following votes:

| | | |
|---|---|---|
| "W. C. Mittan | 351 | votes |
| "Ralph Yeaman | 343 | votes |
| "George E. Moon | 331 | votes |
| "George R. Heap | 225 | votes |
| "L. C. Perrott | 225 | votes |
| "H. W. Cameron | $223\frac{1}{3}$ | votes |
| "D. M. Hinman | $1\frac{1}{3}$ | votes |

"XX. That, if the said purported cancellation of the subscription agreement of delinquent subscribers was effective and valid and if the said subscribers had no right to vote in person or by proxy at said election of

January 31st, 1938, the following named persons were duly elected as directors: George R. Heap, L. C. Perrott, H. W. Cameron, D. M. Hinman and W. C. Mittan."

Based upon the findings of fact, the court entered decrees dated December 23, 1938, which stated as follows: That W. C. Mittan, George E. Moon, Ralph Yeaman, L. C. Perrott, and George R. Heap were elected directors of defendant Northeast Transportation Company at its stockholders' meeting of January 31, 1938, and that they constituted the legal board of directors of the Northeast Transportation Company.

We find it necessary to consider but one of the several assignments of error urged by appellants. That is, that the court erred in holding that the stock standing in the name of J. F. Lidral on the books of the company could not be voted by him or by his proxy at the annual meeting, and that the sale and transfer to Lidral was illegal and void.

Lidral was made a party to the action originally, but, for some reason not indicated in the record, he was dismissed before the case went to trial.

The question is, therefore, whether, in a *quo warranto* action instituted to challenge the right of directors to hold office, the right of ownership to stock may be decided when those who claim ownership are not parties to the action.

The books of the company showed that Lidral was the owner of the 176 shares of stock, which were voted for appellants Hinman, Heap, Cameron, and Perrott.

Rem. Rev. Stat. (Sup.), § 3803-1 [P. C. § 4592-31], provides:

"As used in this act, . . .

"7. A 'shareholder' is one who owns one or more shares. A subscriber becomes a shareholder upon the allotment of shares to him. Nothing in this section shall be construed as forbidding a corporation to

recognize a person registered on its books as the owner of shares as the person exclusively entitled to have and to exercise the rights and privileges incident to the ownership of such shares, or to hold liable for calls and assessments a person registered as the owner of shares." Laws of 1933, chapter 185, p. 770, § 1.

Rem. Rev. Stat. (Sup.), § 3803-28 [P. C. § 4592-58], sets forth the following provisions relative to the voting of stock:

"1. Except as otherwise provided in the articles of incorporation, every shareholder of record shall have the right at every shareholders' meeting to one vote for every share standing in his name on the books of the corporation. . . .

"4. Every shareholder shall have the right to cast his vote either in person or by proxy duly authorized in writing and filed with the secretary. . . ." Laws of 1933, chapter 185, p. 789, § 28.

"In the absence of statute or agreement, the right to vote stock as between the corporation and the person endeavoring to vote it follows the legal title. For this purpose the legal title is deemed to be in him who is the owner as disclosed by the record books of the corporation. One who does not appear to be a stockholder upon the books of the corporation is not eligible to vote stock, although he may be entitled to the legal title to the stock voted. Usually, the statutes in terms restrict the right to vote to stockholders of record.

"A transferee of stock cannot vote upon it if his transfer is not registered on the books of the corporation; if he desires to be recognized as a stockholder for the purpose of voting, he must secure such standing by having the transfer recorded prior to the time fixed for the determination of persons entitled to vote at a shareholders' meeting." 13 Am. Jur. 528, § 490.

In the case of *State ex rel. Lidral v. Superior Court*, 198 Wash. 610, 89 P. (2d) 501, we stated:

"The right to participate in the election of the governing board of a corporation is one of the most important rights incident to stock ownership."

The rule relative to the right of the owner of stock to vote at a stockholders' meeting is well stated in 14 C. J., Corporations, 898, § 1383:

"In the absence of statutory, charter, or by-law restrictions which are not in conflict with charter or general statutes, the right to vote at a stockholders' meeting is an incident of ownership of stock, and to deprive a stockholder of the right to vote is to deprive him of an essential attribute of his property, which is ordinarily not permissible."

There is nothing in the findings which shows that the incorporation articles or the by-laws of appellant corporation made any provision for the voting of stock contrary to the rule as stated. Under the facts which obtain in these cases, the right to vote stock in the corporation was a right to be accorded only to those who were shown by the corporate records to be stockholders.

The question, as presented here, was decided by this court April 20, 1939, in the case of *State ex rel. Lidral v. Superior Court, supra.* In that case, Lidral petitioned this court for a writ of prohibition to restrain the trial court from proceeding to enter judgment upon facts similar to those in the present case. The principal question involved was the right of the court to determine the ownership of the Lidral stock voted at a stockholders' meeting January 31, 1939. This court granted the writ for the reason that Lidral was not a party to the action which attacked the validity of the election of directors at that meeting.

The right to vote cannot be taken from stockholders of record in a judicial proceeding to which they are not parties. In the instant cases, the books of the corporation disclose that Lidral owned 176 shares of the appellant corporation. His right to vote them, either

personally or by proxy, could not be taken from him in the proceedings to which he was not a party.

The judgments are reversed, with instruction to dismiss the actions.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.

[1]Reported in 95 P. (2d) 1019.