No. 19,072.

State of Colorado ex rel. Frank Gentles *v.* R. M. Barnholt, Sr., et al.

(358 P. [2d] 466)

Decided January 9, 1961.

Messrs. GORSUCH, KIRGIS, CAMPBELL, WALKER AND GROVER, for plaintiff in error.

Mr. FRANK A. BRUNO, Mr. H. D. REED, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

THE parties, appearing here in the same order as they appeared in the trial court, represent opposing slates of directors of Western Oil Fields, Inc., a Colorado corporation. Each claims to have been elected at a meeting of the shareholders of the corporation in Honolulu, Hawaii, in September of 1958, for the 1958-59 term. It appears that the company has over 10,000 stockholders and 5,000,000 authorized shares of voting stock, the majority of which is outstanding.

The action is in the nature of quo warranto under Rule 106 (a) (3), R.C.P. Colo., to test the right of the Barnholt slate of directors, all of whom were named individually as defendants, to hold office as directors and officers of the corporation. The complaint was filed by Gentles after the district attorney for the Second Judicial District of Colorado refused to institute the action.

At the outset we should point out that an action in quo warranto under Rule 106 is authorized with respect to corporations, which are creatures of statute, and presents a different problem than that of an unincorporated body of persons who sought relief under the same rule in *People ex rel. Mijares v. Kniss* (1960), 144 Colo. 551, 357 P. (2d) 352.

Plaintiff's claim is based upon allegations that certain irregularities in the sale and voting of treasury stock by Barnholt and other officers of the corporation were responsible for the election of the Barnholt slate and the defeat of the slate proposed by Gentles. Except as necessary to the disposition of this writ of error, we shall not set forth in detail the irregularities charged, for some are immaterial to the disposition of the present case. The pertinent ones asserted have been summarized by plaintiff as:

"1. (Retroactively) changing a stock list ten days after the election.

"2. Voting of employee bonus and salary stock and 'subscribed' stock that was (allegedly) issued under questionable procedures, for less than market value, with unreasonable credit terms.

"3. Permitting stock certificates dated October 28, 1958, to be counted in a September 27, 1958, election.

"4. Approval of stock transactions on behalf of a corporation by four members of a board of seven, all of whom are personally and directly interested."

This may be further distilled into a statement that the irregularities charged consist primarily of allegations that Barnholt and others caused certain treasury stock of the corporation to be sold, *after* the election, to designated individuals, and, having accomplished this, then caused the votes of such stock to be counted as cast for the Barnholt slate at the election.

Defendants moved to dismiss the complaint for: (1) failure to join as indispensable parties the individuals to whom the treasury stock had been issued and whose

votes of such stock at the election were being challenged, (2) failure to join as indispensable parties the other members of the Barnholt slate of directors, (3) failure to join the corporation as an indispensable party, and (4) failure to make a timely objection to the transfer and voting of the stock in question.

The trial court ruled against defendants on all but the first ground above listed, ruling that the stockholders whose votes of the questioned stock were being challenged were indispensable parties and dismissed the complaint on the ground that the court was without jurisdiction to proceed without such parties. Plaintiffs are here by writ of error challenging the judgment of dismissal on such ground.

Only one issue of substance is presented here and it is whether the trial court was correct in dismissing the complaint for the reason stated.

It is alleged that Barnholt and others caused certain treasury stock to be sold to individuals subsequent to the time of the election and who then voted it retroactively at the earlier election. It is their right to do so that is being challenged.

One such individual is Henry Pui Chun of Honolulu, Hawaii. Pui Chun was sold 137,000 shares of the common stock of Western Oil Fields, Inc., allegedly after the date of the stockholders' meeting in question. His proxy vote of these shares was counted as cast in favor of the Barnholt slate. If permitted to stand, his vote of these shares alone is sufficient to defeat the Gentles and elect the Barnholt slate. It is not disputed that personal service of process cannot be had upon Pui Chun, and if required can effectively defeat any action by the shareholders to review the election of directors now or in the future unless he can at some time be found and served within the borders of the state of Colorado. This could leave the non-Barnholt stockholders with the theoretical right to sue to challenge an election but without a right in fact because they would have to await the pleasure

of this particular stockholder until he comes to Colorado, which he may not wish to do. This result deprives plaintiffs of any remedy, however valid their claim or right to relief. The law is not so impotent.

A review of authorities cited by counsel, which our research has failed to supplement, leads to the conclusion that there is a split of authority on this question.

■ Cases from the State of Delaware, hereinafter cited, present sound authority for the proposition that non-resident shareholders need not be joined if the action is merely one to review the propriety of the election and does not seek any action directly or indirectly against the particular shareholder whose vote is being challenged. Although these cases are to some extent based upon peculiar provisions of the Delaware Corporation Code, the reasoning behind them is sound, and we feel that it represents the better point of view.

The trial court, however, based its action granting the motion to dismiss upon the recent decision of *State, ex rel. Lidral v. Superior Court for King County* (1939), 198 Wash. 610, 89 P. (2d) 501, in which the trial court held the absence of such party to be conclusive in requiring dismissal. There the court was faced with the identical problem with which we are here presented, and phrased its decision in the following language:

"It will be seen that the issue in the quo warranto proceedings hinged upon the ownership of the 176 shares of stock claimed to have been purchased by the relator (Lidral). If the relator had the right to vote the stock by his proxy, Hammond, the legally elected directors would be Hammond, Cornelius, Cameron, Heap, and Budde. On the other hand, if, as found by the Court, the cancellation of the original subscriptions and subsequent sale to relator was void and ineffective, the duly elected board would be Budde, Macfadden, Moon, Hammond, and Cornelius; and Heap and Cameron would be intruders.

"The controlling question is whether, in the light of the facts set forth in the return, the Court would be proceeding in excess of its jurisdiction by the entry of a judgment in accordance with its announced conclusions. The relator is not a party to that proceeding, and he contends that, in his absence, the court is without jurisdiction to adjudicate his ownership of the stock or his right to have his shares voted and counted at the election for directors. * * *

" * * * It is, therefore, according to every definition, an indispensable party to any bill which challenges its right to own or vote upon its * * * shares."

The court considered the Delaware cases and distinguished them in the following language:

"These are Delaware cases and are based upon the organic corporation act of that state. * * *

"In this state, we have no statute similar to the Delaware law. Here, while the courts may, by a proceeding in the nature of quo warranto, inquire into the right of persons assuming to exercise corporate office, in doing so, they must proceed in accordance with well recognized principles of law."

The difficulty in attempting to apply the rule laid down in *State ex rel. Lidral* to the present action is that the facts there were entirely different. The corporation there involved was a company with 500 shares of outstanding stock and it is not known whether service of process could have been made on one Hammond, the stockholder in question. In addition it involved the question of who could vote stock *previously cancelled* by the board of directors for non-payment of assessments *after* the stock had been resold to Lidral *before* the meeting in question. That is very different from issuing stock after an election to a non-resident stockholder and then voting such stock retroactively in favor of one contending slate of directors, and thus insuring corporate control, as alleged here.

*State ex rel. Lidral* cites 14 C.J. 898, §1383, setting forth the applicable general rule as:

"In the absence of statutory, charter, or by-law restrictions which are not in conflict with charter or general statutes, the right to vote at a stockholders' meeting is an incident of ownership of stock, and to deprive a stockholder of the right to vote is to deprive him of an essential attribute of his property, which is ordinarily not permissible."

 We find no quarrel with this rule, but note its limited application to the facts here. True, it "is ordinarily not permissible" to deprive a stockholder of his right to vote, but legitimate stockholders should have access to the courts to determine whether stock such as that in dispute here was counted in voting for directors, and may not be foiled in protecting their lawful rights and property because the alleged owner of the disputed stock is placed by accident or design beyond the jurisdiction of the court.

 Absence of an express statute prescribing parties and procedures is no bar to this suit. 2 *Fletcher,* supra, states at page 77, §293:

"Statutes providing remedies for questioning the validity of corporate elections and the title to corporate offices generally prescribe in express terms the persons who may institute proceedings. In the absence of express provisions, proceedings to determine the title to office, and to oust persons who are illegally in possession, may be instituted by the corporation, by officers who have the legal title to the office, or, in a proper case, by stockholders."

Also see *Grant v. Elder* (1918), 64 Colo. 104, 170 Pac. 198, and *Wolford v. Bankers Security Life Co.* (1932), 91 Colo. 532, 17 P. (2d) 298, for Colorado cases permitting shareholders to challenge the validity of corporate elections by actions in quo warranto, both of which were handed down prior to the adoption of Rule 106 (a) (3),

R.C.P. Colo., but under statutory language substantially similar.

■ The rule seems to be that any person making a sufficient showing of a special interest in the business of the corporation and its property, is a proper party. 2 *Fletcher* 77, §293. Where, as here, the proceedings involve the entire control of the corporation, the grievance alleged is not just that accruing to an individual, but one common to the entire corporate body. *Second Chappel case infra* at page 194. Thus suit may be brought by one or more stockholders affected.

With all due respect to the Washington Court, we do not feel that the distinctions there raised *vis a vis* the Delaware decisions, are valid. The line of reasoning adopted by the former would in effect open the door to unscrupulous directors and other officers who may not even be stockholders (unless required to be so by the articles or by-laws) of a Colorado corporation, to perpetuate their positions of control of the corporation, and perhaps harm the company financially by improper or illegal manipulation of the stock. At the same time they could virtually preclude any challenge to their actions by the owners of the business, the shareholders, to forestall such maneuvers.

The Delaware cases establishing the better approach to the problem are *Chappel v. Standard Scale and Supply Corporation* (1927), 15 Del. Ch. 333, 138 Atl. 74, later reversed by *Standard Scale and Supply Corp. v. Chappel* (1928), 16 Del. Ch. 331, 141 Atl. 191, and *In re Diamond State Brewery* (1938), 22 Del. Ch. 364, 2 A. (2d) 254. In the second *Chappel* case, supra, the court drew what we feel to be the valid distinction differentiating cases where such non-resident stockholders are and are not indispensable parties:

"We agree with the Chancellor that the legality of the issuance of the Williamson stock — that is, the right of Williamson to own or hold such stock as distinguished from the mere right to vote the stock — could not prop-

erly be passed upon in a proceeding to review a corporate election to which Williamson was not a party.

"The suggestion, however, that the right to Williamson to vote the 45 shares issued within 20 days of the election cannot be considered, because Williamson is not a party, is a very different question and must now be briefly considered."

And, in *In re Diamond State Brewery*, supra, the court said:

"While in such a proceeding the legality of an issuance of stock could not be adjudicated adversely to the absent holder, yet his right to vote could be passed upon notwithstanding his absence insofar as was necessary to determine the result of the particular election that was under review."

While it is true that the Delaware Code does provide a specific statutory method (set out in the second *Chappel* case, supra) whereby shareholders may obtain a court review of the election of directors or officers, such a procedure is not basically dissimilar from an action in the nature of quo warranto under Rule 106, R.C.P. Colo. The requirements of neither state set forth the parties who are indispensable to such a proceeding, and both provide a framework under which the state, or a shareholder if the state refuses to act, may review the propriety of a challenged election.

The quoted language from both opinions (second *Chappel* case and *In Re Diamond*) adequately and effectively draw the distinction between direct actions against stockholders and those which are merely judicial reviews of corporate elections. To hold otherwise and to refuse to recognize the distinction amounts to an emasculation of established procedures to obtain such judicial review, especially in large, publicly owned corporations which have many stockholders both within and without the state, and often some who are residents of foreign nations.

One other point raised by defendants in error is

worthy of mention, and we note it in the hope of avoiding future litigation. We are convinced that the defendants in error are correct in their contention that the corporation, i.e., Western Oil Fields, Inc., is an indispensable party, see 2 *Fletcher,* supra, 78, §293, and authorities cited therein.

The judgment is reversed and the cause remanded to the trial court with directions to vacate the judgment of dismissal, and to grant leave to plaintiffs to bring in the corporation as a party defendant, and thereafter to proceed promptly to trial on the merits of the controversy.

MR. JUSTICE HALL did not participate.