**ER HOLDINGS, INC., Plaintiff,**

v.

**NORTON COMPANY, et al.,**
**Defendants.**

**Civ. A. No. 90–10666–T.**

United States District Court,
D. Massachusetts.

April 11, 1990.

Harvey J. Wolkoff, Ropes & Gray, Boston, Mass., for plaintiff.

Stephen Daniel Poss, Marshall Simonds, Don M. Kennedy, Goodwin, Procter & Hoar, Boston, Mass., Paul K. Rowe, William C. Sterling, Bernard W. Nussbaum, Wachtell, Lipton, Rosen & Katz, D. Scott Wise, Davis, Polk & Wardwell, New York City, for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff ER Holdings Inc. ("ER"), a Delaware corporation, is a wholly-owned subsidiary of BTR plc, a holding company organized under the laws of the United Kingdom. The defendant Norton Company ("Norton") is a manufacturing concern incorporated in Massachusetts with headquarters in Worcester. Additionally, a number of individuals have been named as defendants, including the twelve members of Norton's Board of Directors ("the Board").[1]

1. In addition to naming the company and the Board, the complaint names as defendants Massachusetts Secretary of State Michael Connolly, Attorney General James Shannon, and Director of Massachusetts Securities Division, Barry Guthary.

The underlying litigation concerns ER's attempt to acquire Norton by means of a hostile, all-cash/all-shares tender offer, together with a contemporaneous proxy solicitation. Presently at issue is ER's motion for partial summary judgment or, in the alternative, for a mandatory preliminary injunction requiring Norton to hold its annual meeting of shareholders on April 26, 1990.

### I.

On March 16, 1990, ER commenced a $75 all-cash/all-shares tender offer to purchase Norton. Simultaneously, ER disclosed its intention to solicit proxies for Norton's annual meeting, in order to elect a board of directors that would accept this tender offer should it be rejected by the existing Board. Also on March 16, 1990, ER moved for a temporary restraining order to prevent Norton or the Commonwealth of Massachusetts from enforcing Mass.Gen.L. ch. 110C (Massachusetts Take–Over Bid Regulation Act), and for an order requiring any related litigation to be filed in this court. After a hearing, those motions were allowed on the same day. Preliminary injunctive relief on these matters was provisionally vitiated by the entry of a stipulation in which the defendants agreed to extend the forum limitation, and to seek enforcement of Mass.Gen.L. ch. 110C only after five days notice to ER.

The Board rejected ER's tender offer on March 29, 1990. After rejecting ER's offer, the Board voted unanimously on March 29, 1990 to cancel the Norton annual meeting, set in the by-laws for the fourth Thursday in April (April 26 this year). In its place, the Board scheduled a "special meeting" for June 26, 1990, four days before the last possible day for such a meeting.

*See* Mass.Gen.Laws Ann. ch. 156B, § 33 (West Supp.1989) (requiring annual meeting be held within six months of end of corporation's fiscal year). As justification for this action, Norton cited the advice of its financial advisor, Morgan Stanley & Co., Inc., to the effect that the ER offer was inadequate, and that as many as sixty days would be needed to properly explore "alternatives."

On March 30, ER then filed an Amended Verified Complaint For Declaratory And Injunctive Relief. In it, ER seeks, among other things, to ensure, in furtherance of its proxy solicitation, that Norton's annual meeting will be held on April 26, 1990.[2] It is the Board's decision to cancel the annual meeting in favor of a later special meeting that prompts ER's alternative motions for partial summary judgment and injunctive relief.[3] Specifically, ER seeks an order that the annual meeting be held on April 26, 1990, as provided by Norton's by-laws. Additionally, ER contends that, even if the by-laws could be construed to permit a postponement, the Board's manipulation of Norton's corporate machinery for its own self-perpetuation requires that its efforts to postpone the annual meeting be declared invalid.

Norton, on the other hand, contends that the Board's substitution of a special meeting for the annual meeting is fully authorized by the by-laws. Moreover, Norton contends that the Board's decision to postpone is a reasonable exercise of business judgment.

### II.

The first inquiry this court must make is as to whether Norton's by-laws preclude the Board's cancellation of its scheduled April 26, 1990 annual meeting.

---

**2.** Specifically, ER seeks (1) a declaration that Mass.Gen.L. ch. 110c, together with related rules and regulations, is unconstitutional; (2) relief enjoining the statute's application to the offer; (3) a declaration that Norton's poison pill is null and void; (4) injunctive relief against the pill's use based on breach of fiduciary duty; (5) a declaration that Mass.Gen.L. ch. 110F (Business Combination Act) is inapplicable to Norton, or should it apply, that the Board must render it inapplicable to the offer and proposed

acquisition; (6) a declaration that Mass.Gen.L. ch. 110D (Control Share Act) is inapplicable to Norton; and (7) a mandatory injunction requiring that the annual meeting be convened on April 26, 1990 as required by Norton's by-laws.

**3.** ER's standing to so move is not in issue as it held Norton common stock as of the record date and, indeed, currently beneficially owns more than 300,000 shares.

### A. The By–Laws

The by-laws of a corporation, along with state corporation law and the corporation's articles of organization and charter, regulate the manner in which a company's officers and directors must conduct the company's business. *See generally* 13A C.A. Peairs, Massachusetts Practice § 421 (2d ed. 1971). By-laws, while inferior to state law and articles of organization, nonetheless "define the duties and powers of stockholders and directors with reference to each other and the corporation." *Bushway Ice Cream Co. v. Fred H. Bean Co.*, 284 Mass. 239, 244–45, 187 N.E. 537 (1933). *See also Kubilius v. Hawes Unitarian Cong. Church*, 322 Mass. 638, 644, 79 N.E.2d 5 (1948). The corporate by-laws constitute a contract between the corporation's owners—the shareholders—and its managers, the Board. *Id.; Jessie v. Boynton*, 372 Mass. 293, 303, 361 N.E.2d 1267, 1273 (1977); *Mitchell v. Albanian Orthodox Diocese in America, Inc.*, 355 Mass. 278, 282, 244 N.E.2d 276, 279 (1969). *See also Bushway*, 284 Mass. at 245, 187 N.E. 537. And, while it is true that the "stockholders' by-law power is not plenary, but is subject to limitations of statute, public policy in unwritten law, and the charter," 13A Massachusetts Practice § 421, at 84, no party to this litigation has argued, nor has the court found any authority suggesting, that the by-laws here have been nullified by any superceding authority. The Board, therefore, is bound by the provisions of the Norton by-laws.[4] *See Bushway*, 284 Mass. at 243, 187 N.E. 537.

Two distinct provisions of the by-laws constitute the heart of the dispute between the parties. Article I provides that:

**The Annual meeting of stockholders shall be held on the fourth Thursday of April in each year** (or if that be a legal holiday, on the next succeeding full business day) at the principal office of the corporation in Massachusetts at 10:30 o'clock a.m. unless a different hour or place (within the United States) is fixed by the Board of Directors or by the Chairman of the Board of Directors or by the President. The purposes for which the annual meeting is to be held, in addition to those prescribed by law, by the Articles of Organization or by these by-laws, may be specified by the Board of Directors or by the President. **If no annual meeting has been held on the date fixed above, a special meeting may be held in lieu thereof with all the force and effect of an annual meeting.** (emphasis supplied).

Article VII(e) provides that:

These by-laws may be amended or repealed by vote of the stockholders at any annual or special meeting or by the Board of Directors at any regular or special meeting, provided that ... **[n]o change in the date of the annual meeting of stockholders may be made within sixty days before the date fixed in these by-laws....** (emphasis supplied).

### 1. The Plain Meaning Rule

Because Norton's by-laws are a bargained-for agreement between the shareholders and directors, principles of contract construction properly guide the inquiry as to whether the by-laws permit postponement of the meeting. One familiar maxim is that a contract should be construed in accordance with its plain meaning. *See DeFreitas v. Cote*, 342 Mass. 474, 477, 174 N.E.2d 371, 373 (1961) (citations omitted). In the absence of ambiguity, Massachusetts law enforces the express terms of a contract. *See Liberty Mutual Insurance Co. v. Gibbs*, 773 F.2d 15, 17 (1st Cir.1985). *See also Edwin R. Sage Co. v. Foley*, 12 Mass.App. 20, 28, 421 N.E.2d 460 (1981) (where words of contract are plain and free from ambiguity, they must be enforced according to their ordinary meaning).

---

**4.** At oral argument the Board asserted not only its right, but its duty, to resist a harmful takeover attempt, citing *Heit v. Baird*, 567 F.2d 1157, 1161 (1st Cir.1977). But *Heit* makes clear that, in doing so, a board must act within lawful means. Because the by-laws form private law agreed upon by the board and the stockholders, a defensive maneuver that violates a by-law cannot be justified by reliance on *Heit.*

■ Article VII expressly deals with amendments to the by-laws. Subsection (e) thereof clearly and unambiguously states that "[n]o change in the date of the annual meeting of stockholders may be made within sixty days before the date fixed in these by-laws...." Article I of Norton's by-laws sets the annual meeting for the fourth Thursday of April—this year, April 26th. Under Article VII(e), that meeting date arguably could have been changed by the Board up until February 26, 1990. The Board's purported cancellation on March 29, 1990, only 28 days before the scheduled annual meeting, was clearly beyond the limitations period provided in the by-laws.

The Board argues, however, that it did not "amend" the by-laws to "change" the meeting date. Rather, the Board contends that the special meeting it called "in lieu of" the annual meeting was expressly authorized by the last sentence in Article I which states: "If no annual meeting has been held on the date fixed above, a special meeting may be held in lieu thereof with all the force and effect of an annual meeting." The Board argues, therefore, that Article VII(e)'s sixty-day rule simply does not apply.

■ Under Massachusetts contract law, the by-laws must be read as a whole so that, if possible, provisions are harmonized with one another. *See Spartans Indus. v. Pilling Shoe Co.*, 385 F.2d 495, 499 (1st Cir.1967) (harmonizing construction preferred even if certain language, if viewed alone, more readily suggests a different reading); *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 795, 494 N.E.2d 374 (1986) (contracts must be construed to give reasonable effect to each provision). Norton, however, sees no interplay between the two provisions. Indeed, at oral argument defense counsel argued that, assuming good faith, the Board could avoid the sixty-day rule each and every year by changing the annual meeting to a special meeting under the cited provisions of Article I. This court disagrees. Such an interpretation would effectively read Article VII(e) out of the by-laws. *See, e.g., Aprahamian v. HBO & Co.*, 531 A.2d 1204,

1206 (Del.Ch.1987) (recognizing that allowing postponements absent a showing of impossibility would " 'authorize directors to change a meeting date for any year, at any time in advance of the meeting for any reason of convenience to the directors, provided no fraud, bad faith, or improper motive was shown.' ") (quoting *Gries v. Eversharp*, 31 Del.Ch. 489, 69 A.2d 922, 926 (1949)).

This court concludes that the most rational interpretation—giving reasonable effect to both provisions—would be to construe Article VII(e) as having prospective application, while giving the last sentence of Article I retrospective application. The plain language of the two sections supports this prospective/retrospective distinction. Article VII(e) uses the word "change," saying "no change in the date ... may be made within sixty days...." Such language imposes a time limitation on affirmative action that would change the date of the meeting in the future. The last sentence of Article I, however, is passive. Its purpose is to provide a vehicle for corporate reaction to a circumstance that has already occurred—the fact that, for some reason, "no annual meeting has been held...."

The Board apparently thinks it unlikely that the drafters of the by-laws would have "take[n] the trouble to authorize special meetings in lieu of annual meetings merely to cover an aberrational case in which absent-minded directors let an annual meeting date go by without doing anything." *Defendant's Memorandum In Opposition*, at 16. Maybe so. But, that narrow view overlooks the reality that there could be many other reasons why an annual meeting might not take place, other than mere absent-mindedness. As examples, a meeting may not have occurred due to quorum failure, *force majeure*, the intransigence of a board seeking to aid its reelection, or some other extraordinary circumstance that makes convening the meeting impossible.

An additional factor underscores the rationality of the prospective/retrospective distinction between the two provisions.

Article VII(e) likely traces its lineage back to a Massachusetts statutory requirement that corporate annual meeting dates not be changed within sixty days of their scheduled occurrence. Mass.Gen.Laws Ann. ch. 156B, § 38 (West 1970) (added by St.1964, c. 723 § 1).[5] A snippet of legislative history, entitled "Notes by Boston Bar Committee—1964," follows § 38 in the West statutory annotation. This history informs that the first paragraph of § 38 "follows section 222 of the Delaware law." *Id.* Section 222 was the second recodification of Delaware General Corporation Law § 30 (Del.Rev. Code § 1944 (1915) (recodified as Del.Rev. Code § 2062 (1935)) (recodified as Del.Code Ann. tit. 8, § 222 (1953)) (repealed in part and incorporated in part into Del.Code Ann. title 8, § 211 (1967) by 56 Del.Laws, ch. 50 (1967)).[6] Section 30, in pertinent part, provided:

> ... directors shall be elected at the time and place within or without this State named in the by-laws, and which shall not be changed within sixty days next before the day on which the election is to be held.

It was not until 1967, only three years after Massachusetts borrowed the sixty day provision from Delaware, that Delaware repealed its sixty-day requirement.

In addition, Delaware law at that time had a statute similar in import to Norton's Article I "special meeting" provision. In pertinent part, that Delaware statute provided:

> If the election for directors of any corporation shall not be held on the day designated by the by-laws, the directors shall cause the election to be held as soon thereafter as conveniently may be....

Delaware General Corporate Law § 31 (Del.Rev.Code § 2063 (1935)) (recodified as Del.Code Ann. title 8, § 211 (1953)) (amended and recodified as Del.Code Ann. title 8,

§ 211(c) (1967) by 56 Del.Laws, ch. 50 (1967)).[7]

In *Gries v. Eversharp*, 31 Del.Ch. 489, 69 A.2d 922 (1949), the Delaware Supreme Court was asked to construe the interplay between these two statutory provisions. There, the defendant's by-laws fixed the annual meeting for the third Tuesday of May—in that year, May 17th. On March 3, 1949, the directors set an April 22 record date for the annual meeting. Because it was having difficulty preparing its proxy materials, and because a director requested an extension, the board, on May 2, purported to move the annual meeting to May 24. No bad faith was involved. The Court of Chancery held "that the directors' change of the annual meeting date ... did not constitute an amendment of the by-laws within the contemplation of Section 30." *Id.* 69 A.2d at 925.

In reversing the Court of Chancery, the Supreme Court, while accepting much of the construction put on the statutes by the lower court, nonetheless held:

> [w]e accept as a proper construction of the statutes that the sixty-day and twenty-day provisions of **Section 30 refer to changes in the by-laws, and that Section 31 authorizes directors to call a meeting for the election of directors when the by-law meeting date has passed and no meeting has been held, and also when, before the by-law date, it becomes evident that the annual meeting cannot possibly be held in obedience to the by-laws of the company.** But here, it does not appear that on May 2, when the meeting was changed to May 24, it had become evident that the annual meeting could not possibly be held in obedience with the by-laws. Clearly, the by-law requirement of ten days notice ... could have been complied with. The reason stated for the change, difficulties in assembling data for a proxy state-

---

5. The statute was repealed in 1986, *see infra,* note 11, but Norton, nonetheless, chose to retain the sixty-day prohibition in its by-laws.

6. *See* Ambler, *Postponing The Delaware Corporation's Annual Meeting,* 38 Emory L.J. 207, 210 n. 14 (citing *In re Tonopah United Water Co.,* 16 Del. Ch. 26, 30, 139 A. 762, 764 (1927)).

7. Until 1953, this language was contained in a separate provision of the Delaware General Corporation Law—§ 31. With the 1953 recodification, it joined the sixty-day rule of § 30 in the newly-created Del.Code Ann. title 8, § 211 (1953).

ment, falls short of constituting an impossible obstacle to the holding of a meeting on the by-law date. (emphasis supplied).

*Id.* at 926.

The similarities between these Delaware corporate statutes and Norton's by-laws cannot be missed. *Gries* confronted essentially the same question posed here. And, it reached the same result. Indeed, *Gries* expressly noted the retrospective applicability of the special meeting provision. *See id.* at 926 (noting that only "when the by-law meeting date has passed and no meeting has been held ... [or where] it becomes evident that the annual meeting cannot possibly be held in obedience to the by-laws of the company [will Section 31 apply]."). Moreover, *Gries* recognized the importance of harmonizing the two provisions, rather than ignoring one. *Id.* ("the consequences of extending Section 31 so as to counteract the force of Section 30 seem less desirable than to confine it to its apparent purpose.") and ("[the construction offered by the court below] would have the effect of emasculating the meeting date provisions of Section 30....").

This court holds that the subject by-laws are clear and unambiguous, that the Board's reliance on the special meeting provision of Article I was misplaced, and that the Board's purported meeting change was *ultra vires* and, therefore, invalid.

### 2. The Parties' Intent

██ Even if the relevant by-laws could be construed to be sufficiently ambiguous to warrant an attempt to divine the parties' intent, this court would, nonetheless, con-

clude that the Board's purported postponement of the annual meeting was invalid.

██ First, Massachusetts law construes ambiguous contractual language against the drafter.[8] *See LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp,* 739 F.2d 4, 7 (1st Cir.1984); *Chelsea Indus. v. Accuray Leasing Corp.,* 699 F.2d 58, 61 (1st Cir.1983). Indeed, the drafter of an ambiguous term is generally held to any reasonable interpretation attributed to it by the nondrafting party. *See Merrimack Valley Nat'l Bank v. Baird,* 372 Mass. 721, 724, 363 N.E.2d 688 (1977). ER's prospective/retrospective reading of the interrelationship between Articles I and VII(e), as already discussed above, is entirely reasonable.

Second, one of the most sacred rights of any shareholder is to participate in corporate democracy. *See Albert E. Touchet v. Touchet,* 264 Mass. 499, 509, 163 N.E. 184 (1928) (quoting approvingly *Camden & Atlantic Railroad v. Elkins,* 10 Stew. (N.J.) 273, 276, which held that "[t]he right ... to vote at [elections of the directors] is a right that is inherent in the ownership of stock ... [and] cannot be deprived ... upon the allegation that he proposes to use his legal rights for purposes which others may think to be detrimental to the interests of the corporation."); *Blasius v. Indus., Inc. v. Atlas Corp.,* 564 A.2d 651 (Del.Ch.1988) (recognizing that, because the legitimacy of democratic corporate governance relies on the integrity of shareholder franchise, corporate law only creates agents for shareholders, not "Platonic masters.").

Courts and commentators have noted repeatedly the significance of shareholder voting rights.[9] Given their importance, it

---

8. On April 9, 1990, defense counsel filed an additional argument with respect to this principle. Defendant correctly notes that such a construal against the drafter is meant as a "fallback" rule. The court agrees and treats it as nothing more.

9. *See Reserve Life Insurance Co. v. Provident Life Insurance Co.,* 499 F.2d 715 (8th Cir.1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 803 (1975); *Danaher Corp. v. Chicago Pneumatic Tool Co.,* No. 86 Civ. 3499 & 3638 (PNL), slip op., 1986 WL 7001 (S.D.N.Y. June 18, 1986); *Holly Sugar Corp. v. Buchsbaum,* Fed.Sec.L.Rep. (CCH) 98,366, 1981 WL 1708

(1981); *DuVall v. Moore,* 276 F.Supp. 674 (N.D. Iowa 1967); *Allen v. Prime Computer Corp.,* 540 A.2d 417 (Del.1988); *State ex rel. Gentles v. Barnholt,* 145 Colo. 259, 358 P.2d 466 (1961); *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 405 Pa. 142, 173 A.2d 319 (1961); *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46, 74 N.W.2d 286 (1955); *Fein v. Lanston Monotype Co.,* 196 Va. 753, 85 S.E.2d 353 (1955); *State ex rel. Johnson v. Heap,* 1 Wash.2d 316, 95 P.2d 1039 (1939); *Reimer v. Smith,* 105 Fla. 671, 142 So. 603 (1932); *Lord v. Equitable Life Assurance Society,* 194 N.Y. 212, 87 N.E. 443 (1909); *Colonial Securities Corp. v. Allen,* C.A. No. 6778,

is unlikely that the Norton shareholders intended that the company's by-laws would permit the easy postponement of their voting rights that the Board's interpretation would allow. As defense counsel conceded, the Board's reading would allow a circumvention of the sixty-day rule each year, given a good enough reason. *See Aprahamian*, 531 A.2d at 1206 (allowing postponements other than for impossibility would " 'authorize directors to change a meeting date for any year, at any time in advance of the meeting for any reason of convenience to the directors, provided no fraud, bad faith, or improper motive was shown.' ") (citation omitted). This court holds that the Norton shareholders did not intend such a result.

Third, the Board's interpretation is inconsistent with the spirit of the Article VII, the amendments section. The Board would concede that fixing the annual meeting for the fourth *Wednesday* of April, rather than the fourth *Thursday*, would require an amendment to the by-laws, given the requirements of Article VII(e). To suggest that such a relatively ministerial change would be subject to the protection of VII(e), but that a postponement of the annual meeting for two months would not be subject to Article VII protection, is an interpretive leap that this court is not willing to take.

Article VII(e) is intended to protect shareholders' voting rights. The Board's suggestion that its proffered special meeting does not endanger shareholder voting rights, but merely delays them, misses the point. Courts have consistently recognized the irreparable harm associated with delay in these contexts. *See, e.g., Hyde Park Partners v. Connolly*, 839 F.2d 837, 853 (1st Cir.1988) (threat of delay to tender offer constitutes substantial and irreparable harm); *San Francisco Real Estate Investors v. Real Estate Investment Trust of America*, 701 F.2d 1000, 1002–03 (1st Cir. 1983) (finding that " 'loss of [a] best opportunity to seize control of a major corporation … could be crucial' ") (citations omitted); *Newell v. Connolly*, 624 F.Supp. 126, 129 (D.Mass.1985) (delay threatened by Massachusetts takeover statute found irreparable). *See also Ocilla Indus. v. Katz*, 677 F.Supp. 1291, 1301 (shareholder disenfranchisement creates serious risk of irreparable harm). A reconfiguration of the electorate, as defense counsel conceded Norton hopes to accomplish, could foreseeably limit the choices shareholders have right now. For one thing, the ER offer could evaporate. This could certainly constitute the kind of "impairment," if not full deprivation, about which Professor Fletcher admonishes. *See supra*, Fletcher, note 9.

Fourth, Norton's retention of the sixty-day rule even after the legislative repeal of Mass.Gen.L. ch. 156B, § 38 further supports ER's position.[10] In 1986, the Massachusetts legislature repealed its sixty-day provision mirroring Article VII(e) of Norton's by-laws.[11] Ostensibly, that statutory change was made to free the hands of directors to strike more liberal deals with their shareholders with respect to postponements of meetings. Norton, however, did not choose to drop the sixty-day provision from its by-laws. Given Norton's posi-

slip op., 1983 WL 19788 (Del.Ch. April 18, 1983); *Penn–Texas Corp. v. Niles–Bement–Pond Co.*, 34 N.J.Super. 373, 112 A.2d 302 (Ch.Div.1955). *See also* 5 W. Fletcher, Cyclopedia Of The Law Of Private Corporation And Business Organizations § 2025 (rev.perm.ed. 1976):

> Generally, the right to vote is a right that is inherent in and incidental to the ownership of corporate stock, and as such is a proprietary right. It follows that the stockholder cannot be deprived of the right to vote his or her stock nor may right be essentially impaired, either by the legislature or by the corporation, without his or her consent, through amending the charter, or by by-law. (citations omitted).

*Cf. Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970) (finding congressional belief that "[f]air corporate suffrage is an important right.") (citation omitted).

10. In pertinent part, § 38 read: "No change in the date fixed in the by-laws for the annual meeting shall be made within sixty days before the date stated in the by-laws." Mass.Gen.Laws Ann. ch. 156B, § 38 (West 1970).

11. *See* Mass.Gen.Laws Ann. ch. 156B, § 38 (West Supp.1989) (repealed by St.1986, c. 186, § 7).

tion that the Board is competent and vigilant, it is reasonable to assume that the by-laws's retention was deliberate, and continues to be a viable protection for Norton shareholders. Defense counsel referred to the continued presence of Article VII(e) as "vestigial." This court is unwilling to take such a view. The shareholders cannot be asked to read the directors' minds. It is well-settled that objective manifestations of intent, not subjective ones, control matters of contract. *See Pahlavi v. Palandjian*, 809 F.2d 938 (1st Cir.1987) (citing Restatement (Second) of Contracts, § 2, comment b (1981)). *See also Eustis Mining Co. v. Beer, Sondheimer & Co.*, 239 F. 976, 984 (S.D.N.Y.1917) (Hand, J.) ("It makes not the least difference whether a promisor actually intends that meaning which the law will impose on his words. The whole House of Bishops might satisfy us that he intended something else, and it would make not a particle of difference in his obligation.").

As has been stated above, this court holds that the two relevant by-laws provisions are clear and unambiguous. But even assuming ambiguity, this court interprets the by-laws as proscribing the attempt by the Norton Board to change the date of the annual meeting from April 26, 1990 to June 26, 1990.

### III.

■■■ Because no material facts are disputed, this motion is properly formed as one for partial summary judgment with respect to Count Five of ER's Amended Verified Complaint For Declaratory And Injunctive Relief. Plaintiff seeks a permanent injunction to assure its judgment. Defense counsel urged the court at oral argument that, even if the court were to find summary judgment proper, satisfaction of the four-pronged test for preliminary injunctions is, nonetheless, required for the equitable relief plaintiff seeks. *See Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009

(1st Cir.1981) (conditioning preliminary injunctive relief upon consideration of (1) plaintiff's likelihood of success on the merits, (2) irreparable harm, (3) balance of harms, and (4) the public interest). While neither side cited any law on this point, this court assumes, *arguendo*, that defendants are correct. *See Durango Herald, Inc. v. Riddle*, 719 F.Supp. 941, 946 (1988) ("The standard for permanent injunction is essentially the same as that for preliminary injunction with the exception that a plaintiff must demonstrate actual success on the merits.").

ER has proven actual success on the merits. Both the plain meaning of the by-laws and their most reasonable interpretation compel the conclusion that the date of a Norton annual meeting cannot be changed within sixty days of its scheduled occurrence, unless holding the annual meeting on the scheduled date has proven impossible.[12] Only in that case may a special meeting be held "in lieu of" the annual meeting.

In addition, irreparable harm to legitimate shareholder rights exists. The courts of this Circuit have recognized that delay in these contexts is deadly. *See Hyde Park*, 839 F.2d at 853; *San Francisco Real Estate*, 701 F.2d at 1003; *Newell*, 624 F.Supp. at 129. In addition, delay resulting in disenfranchisement may constitute irreparable harm. *See Danaher, supra* ("It is well-settled that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares...."); *Allen v. Prime, supra; Ocilla Industries v. Katz*, 677 F.Supp. at 1301.

Having established actual success on the merits—as opposed to a mere likelihood of success—the remaining factors are readily satisfied as well. The balance of harms clearly tips in ER's favor, because its legitimate interest in enforcing Norton's by-laws—a contract made for the sharehold-

---

**12.** Should the Board find that circumstances warrant, it can always move at the annual meeting for an adjournment to a later date. Such a procedure preserves the sanctity of the scheduled meeting date while, at the same time, providing the Board with an opportunity to state its case as to why postponement is in the best interests of the shareholders.

ers' benefit—must trump the Board's interest in circumscribing them.

Similarly, the public interest is also served because the Board's attempted action, which would tend to "violate[ ] public policy by upsetting the balance between the legitimate interests" of both sides, is prevented. *Seibert v. Milton Bradley Co.*, 380 Mass. 656, 662, 405 N.E.2d 131 (1980). Nor can the public interest, including the statutory constituencies relied on by Norton,[13] defeat ER's right. The public can have no legitimate interest in the abrogation of contract rights conferred upon Norton shareholders such as ER.

The same result would obtain if ER's plea were to be treated as one for specific performance of the by-laws' "contract." To justify such an order, a claimant must show that an adequate remedy at law is unavailable, and that the burdens of enforcement are not disproportionate to the advantages gained. *See Sanford v. Boston Edison Co.*, 316 Mass. 631, 634–35, 56 N.E.2d 1 (1944). *See generally*, E.A. Farnsworth, Contracts 826–38 (in addition to unavailability of adequate remedy at law, "a number of other limitations restrict the availability of specific performance."). Farnsworth, at 832. Damages cannot compensate ER for the loss of its contractual right to vote as a shareholder at an annual meeting on the date set by Norton's by-laws. The contract to be enforced by specific performance—the Norton by-laws—is not too indefinite "to provide the basis for an appropriate order." *Id.* Nor is there any question of owed performance, *id.* at 835, difficulty of enforcement, *id.* at 834, unfairness, *id.* at 837, or violation of public policy, *id.* at 838.

### IV.

For the foregoing reasons, therefore, the Norton Board is ordered to restore the annual meeting to its original date of April 26, 1990. In addition, the record date for determining voter eligibility is to be restored to its original date of March 2, 1990. Furthermore, the parties are prohibited from taking any other action that would make impossible the convening of the annual meeting on April 26, 1990.[14]

An order will issue.

---

**13.** *See* 1989 Mass. Acts c. 242, § 13 (amending statutory good faith considerations meriting protection under the business judgment rule to include the interests of employees, suppliers, customers, creditors, the community, and the local economy).

**14.** Given this court's determination that the by-laws prohibit Norton's efforts to extend the date for its annual meeting, it is unnecessary to reach ER's additional arguments and Norton's responses thereto.