NEWELL CO., Plaintiff,

v.

Michael J. CONNOLLY, et al. and Wm. E. Wright Co., Defendants.

Civ. A. No. 85–3541–S.

United States District Court, D. Massachusetts.

Sept. 25, 1985.

Paul W. Johnson, Peter S. Terris, Palmer & Dodge, Boston, Mass., for plaintiff.

Carolyn V. Wood, Asst. Atty. Gen., Com. of Mass., Henry J. Wolkoff, Jeffrey B. Storer, Ropes & Gray, Boston, Mass., for defendants.

## MEMORANDUM ON MOTION FOR PRELIMINARY INJUNCTION

SKINNER, District Judge.

In this action the plaintiff corporation seeks to enjoin the defendants from enforcing the Massachusetts Anti-Takeover statute, M.G.L. c. 110C, with respect to Wm. E. Wright Co., a Delaware corporation with its principal place of business in West Warren, Massachusetts. M.G.L. c. 110C, § 1 defines "target company" as "a corporation, organized under the laws of or having its principal place of business in the commonwealth, whose securities are or are to be the subject of a take-over bid". Wm. E. Wright Co. fits this definition of a target company.

The plaintiff has purchased substantial amounts of the stock of Wm. E. Wright Co. on the open market, without a tender offer, in part in the over-the-counter market and in part by private purchases from New York investors among others. As a result of its most recent purchase by private sale, it now owns 35% of the 2,111,910 shares of Wm. E. Wright Co. The common stock is held by some 1,600 persons, the residence of whom does not appear of record.

M.G.L. c. 110C is designed to prevent the takeover of target companies by open market purchases ("creeping tender offers") without extensive filing with the secretary of the commonwealth. The requirements of the statute are triggered by the acquisition of more than 10% of the outstanding stock of the target company. The plaintiff has been in violation of M.G.L. c. 110C since May 30, 1985.

In the course of these proceedings, the defendant Michael Unger, who is the official in the office of the secretary charged with enforcement of c. 110C, has represented that he has no present intention of enforcing the statute against the plaintiff. Similarly, the defendant Wm. E. Wright Co. has represented to the court that it has no present intention of applying to the secretary for enforcement of the statute.

The plaintiff has made all the filings required by § 13 of the Securities Exchange Act of 1934, 15 U.S.C. § 78m.

The considerations governing the entry of a preliminary injunction, as outlined by the Court of Appeals in *Agency Rent-A-Car, Inc. v. Connolly*, 686 F.2d 1029, 1034 (1st Cir.1982), are as follows:

1. Likelihood of success on the merits.
2. Likelihood of immediate irreparable harm.
3. The balance between harm to the plaintiff in the absence of the injunction and harm to the defendant which might result from entry of the injunction.
4. The effect on the public interest from either the granting or denial of the injunction.

I will take up these elements in order.

1. *Likelihood of Success on the Merits.*

The plaintiff asserts that c. 110C is unenforceable because it is preempted by §§ 14(d) and (e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(d) and (e), commonly referred to as the Williams Act. The Williams Act regulates tender offers, but does not regulate the takeover of corporations by open market purchases (ex-

cept for required filings under § 13).[1] The plaintiff also asserts that the state statute conflicts with the Commerce Clause of the United States Constitution.

The Court of Appeals of this circuit has held that the sanction provisions of the state statute are not preempted by the Williams Act: *Agency Rent-A-Car, Inc. v. Connolly, supra.* In *Edgar v. Mite Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), three justices of the Supreme Court thought that a similar anti-takeover statute in Illinois was preempted by the Williams Act. Two justices thought otherwise, and four passed the question. In my view, the sanction provisions are those most in conflict with the Williams Act, and it is unlikely that the court of appeals would find the filing and disclosure provisions of the statute any more in conflict with the Williams Act than state Blue Sky laws are in conflict with the registration requirements of the Securities Act of 1934. Whatever the state of the law may be on the national scene, the law in this circuit probably precludes the entry of judgment for the plaintiff on this point.

In *Edgar v. Mite Corp., supra*, the Supreme Court held that an Illinois anti-takeover statute similar to M.G.L. c. 110C was in conflict with the Commerce Clause because of its impact on interstate commerce in the trading of securities. The Court held that protection of local shareholders was a legitimate state interest, but because the statute was broad enough to affect out-of-state transactions, it was held invalid. There is no local ownership requirement in the Massachusetts statute. It applies even if there are no local shareholders to be protected. M.G.L. c. 110C clearly by its terms imposes substantial restrictions on the trading of securities in the national market. In fact, several of the transactions which constitute violations of c. 110C in this case were purchases from shareholders who were residents of the state of New York. The potential for delay and indeed for rescission by sellers of stock for a period of up to three years is likely to create a level of uncertainty in the national market for this stock which in my opinion is an impermissible burden on interstate commerce.

Accordingly, in my opinion, the plaintiff is likely to succeed on the merits on its argument that c. 110C conflicts with the Commerce Clause of the United States Constitution. *Edgar v. Mite Corp., supra. Telvest v. Bradshaw*, 697 F.2d 576, 579–82 (4th Cir.1983); *Martin Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 559 (6th Cir. 1982); *National City Lines v. LLC Corp.*, 687 F.2d 1122, 1133 (8th Cir.1982); *Mesa Petroleum Co. v. Cities Service Co.*, 715 F.2d 1425, 1428 (10th Cir.1983).

2. *Likelihood of Immediate Irreparable Harm.*

The defendants strongly deny the likelihood of immediate irreparable harm because they have declared they have no present intention of enforcing the statute. This is initially a persuasive argument. Plaintiff points out, however, that the defendants have not waived any rights or abjured any reliance on the Massachusetts statute. They have only promised to give the plaintiff 48 hours' notice before proceeding. Plaintiff argues that the mere potential for application of the various sanctions contained in the statute is enough to deter corporations from seeking to make tender offers and to deter potential offerees from tendering their stock with the knowledge that their rights may be held in limbo for 45 to 65 days. In support of these propositions they offer the affidavit of Jeffrey C. Broomberg, an investment banker specializing in mergers and acquisitions.

Certainly the provisions of c. 110C provide very substantial burdens on a company engaged in a takeover bid, whether by tender offer or otherwise. These include delay, postponement of the bid for a year

---

**1.** But see *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F.Supp. 1114 (D.Mass.1978) in which it was held that the defendant's press releases brought the takeover bid within the reach of the Williams Act, a situation not present here.

in the event of certain violations, the possibility of criminal prosecution and the possibility, extending three years into the future, of rescission by the sellers if the act has been violated. I am of the opinion that the battery of restraints contained in c. 110C is likely to cause the plaintiff to abandon a course of action to take over Wm. E. Wright Co. which it is entitled to follow under federal law. This is a valuable right, the loss of which constitutes irreparable harm. I will take judicial notice of the fact that time is of the essence in takeover cases and note that in many of the cases cited herein the bidding company withdrew its tender offer as a result of delays occasioned by the state statutes involved. The existence of the statutory remedies, particularly in view of the fact that plaintiff is concededly in violation of the statute at the present time, constitutes imminent irreparable harm. *Mesa Petroleum Co. v. Cities Service Co.*, 715 F.2d 1425, 1428 (10th Cir. 1983).

### 3. *The Balance Between Harm to the Plaintiff and Harm to the Defendant.*

The harm to the plaintiff has been described above as the loss of a valuable right to take over a target company in accordance with applicable federal law. It is difficult to identify harm to the defendants arising from the entry of the injunction. The state officials have no interest in the matter except to safeguard the public interest, a matter to be considered in the next section of this opinion. Whether the target corporation will benefit or lose from change of ownership is impossible to predict. In the event of the grant of an injunction, Massachusetts stockholders may lose rights to participate at the most favorable price given to any stockholder, and may lose the benefit of more detailed filing of information. On the other hand, if plaintiff withdraws, the stockholders may lose forever a chance to sell their shares at a more favorable price than that ordinarily available in an unstimulated market. *Cf. Martin Marietta Corp. v. Bendix Corp., supra,* 690 F.2d at 568. In my opinion, the balancing considerations are best sub-

sumed under the rubric of the balancing of the public interest discussed in the next section.

### 4. *Balancing of the Public Interest.*

The Supreme Court has pointed out the benevolent function of corporate takeovers in keeping management competitive and on its toes. Congress has "expressly embraced a policy of neutrality" in the Williams Act. *Martin Marietta Corp. v. Bendix Corp., supra.* The restrictions imposed, and the sanctions available for violation thereof, in the Massachusetts statute clearly have the effect of dampening the curative effect of takeovers. The stated state policy of protecting local investors can hardly be said to be countervailing in the absence of any assertion by the company that a significant number of its shareholders are residents of Massachusetts. In my opinion, the public interest favors the granting of the preliminary injunction. *Id.,* at 568.

### 5. *Necessity of Fact Finding.*

In reversing grants of preliminary injunctions against enforcement of state takeover statutes, the courts of appeals of the First and Fourth Circuits have stated that injunctions should not be entered except after a plenary trial and opportunity to develop all the facts. *Agency Rent-A-Car v. Connolly, supra; Telvest v. Bradshaw,* 618 F.2d 1029 (4th Cir.1980). In the Fourth Circuit case, by the time the case returned to the court of appeals three years later, the plaintiff had long since abandoned its takeover bid. 697 F.2d 576. Similarly, there were no further proceedings after the court's decision in *Agency Rent-A-Car,* and the takeover bid was abandoned. While the court of appeals' preference for a full record is salutary in most cases, delay pending plenary fact finding is not a practical response to a takeover situation. Judicial proceedings involving corporate takeovers aptly illustrate the aphorism that no decision is a decision. Furthermore, the defendants here have pointed to no relevant facts which are in

**130**

dispute. I have respectfully considered the admonition of the court of appeals in *Agency Rent-A-Car*, but nevertheless conclude that in this case immediate relief is warranted.

Accordingly, on September 20, 1985, I entered a preliminary injunction enjoining the defendants from invoking the provisions of M.G.L. c. 110C.