**HYDE PARK PARTNERS, et al.,**

v.

**Michael J. CONNOLLY, Secretary of the Commonwealth of Massachusetts, et al.**

**Civ. A. No. 87–3027–Mc.**

United States District Court,
D. Massachusetts.

Dec. 29, 1987.

John J. Curtin, Jr., Bingham, Dana & Gould, Boston, Mass., for plaintiffs.

## MEMORANDUM AND ORDER ON MOTION FOR INJUNCTIVE RELIEF

McNAUGHT, District Judge.

Hyde Park Partners, L.P., is a Delaware limited partnership with a place of business in New York City. Hyde Park Holdings, Inc., is a New York corporation and is the only general partner of Partners.

Defendants include the Secretary of the Commonwealth of Massachusetts, the Director of the Commonwealth's Security Division, the Attorney General of the Commonwealth and Voltage Engineering Corporation, a Massachusetts corporation.

On December 21, 1987 at 11:05 A.M. the plaintiffs filed in this court a verified complaint seeking declaratory and injunctive relief. Hyde Park recited therein that a Schedule 13D was being filed the same date with the Securities and Exchange Commission declaring that Hyde Park Partners was holding shares of High Voltage Engineering Corporation, considering the acquisition of High Voltage by tender offer to shareholders of High Voltage throughout the country.

Hyde Park asked this court to declare (by way of declaratory judgment) that the Massachusetts Takeover Bid Regulation Act, Massachusetts General Laws, Ch. 110C (known as the Anti–Takeover Act) is void and unenforceable as applied to Hyde Park because it imposes impermissible burdens forbidden by the Commerce Clause of the Constitution, Art I, § 8.

Plaintiffs sought an ex parte hearing on a motion for a temporary restraining order, arguing that (1) absent such an order, valuable time would be lost; (2) if plaintiff proceeded to purchase further stock without a restraining order, it would incur the risk of civil or criminal liability under the Anti–Takeover Statute; and, (3) multiplicity of suits would be avoided, since, unless restrained, the target corporation would file a state court proceeding, possibly creating an awkward situation.

I studied the papers, noted that diversity existed (which would enable present plaintiffs, if then defendants, to remove the matter to this court anyway), decided that defendants including officers of the Commonwealth should be afforded an opportunity to be heard, and declined to handle the matter on an ex parte basis. I set a hearing for December 22, 1987 at 11:00 A.M. and ordered that defendants be so notified.

Plaintiffs' prediction was "on the nose." The defendant High Voltage Engineering Corporation filed an action in Middlesex Superior Court (bearing docket number 87–7484) by 9:00 A.M. on December 22, 1987, and obtained from an Associate Justice a temporary restraining order enjoining the defendants (plaintiffs here) from purchasing or "acquiring in any manner contrary to Mass.G.L. Chapter 110C, any shares of High Voltage common stock ... until further order of the court." The matter was set down for hearing on a preliminary injunction on December 29, 1987. That order issued before 11:00 A.M. December 22nd.

As might have been expected, the plaintiffs here filed a Petition for Removal of the Middlesex County action to this court under 28 U.S.C. § 1447(b) and Local Rule 13 of this court alleging diversity of citizenship and the requisite jurisdictional amount. Exhibit A, appended to the Petition, the Verified Complaint for Injunctive Relief, filed with the Middlesex County Superior Court clerk gave the name of the

plaintiff as High Voltage Engineering Corp. There would appear, then, to be no problem with removal by the named defendant "Hyde Park Holdings". That complaint did not recite the citizenship of defendant, but did state that the plaintiff is a Massachusetts corporation. It appears then that High Voltage amended its state court complaint to add other plaintiffs including a subsidiary "Shore Instruments & Mfg. Co., Inc.", a New York Corporation. If effective, the presence of this plaintiff as a party to the state court action would destroy diversity and the action could not be removed here. Counsel for Hyde Park filed a "Notice of Nullity" in the state court, alleging therein that the Amended Complaint, contrary to its terms, was not verified, and was improper. The "removed" action, here, was given docket number 87–3039 Mc and was assigned to me as a "related case" to # 87–3037 Mc.

I do not intend now to deal with a *motion* to remand as such, but must consider the subject matter of removal, in conjunction with consideration of the request for preliminary injunctive relief. A certificate was filed in this court to the effect that the certified Petition for Removal of the Middlesex County case was hand delivered to the clerk of that court on December 22, 1987 at 9:20 A.M. and that copies were given to counsel for High Voltage in Court Room 6A of the Superior Court at 9:45 A.M., before argument on High Voltage's request for a temporary restraining order, as well as prior to any motion to amend the complaint. Entirely apart from that situation, it seems fairly obvious that the nondiverse party was added, as a device to prevent removal of the state court action to this court. The named subsidiary plaintiff doesn't appear to have any real interest in this controversy. It has no standing under G.L. Ch. 110C to sue, not being an offeror, target company, or an offeree. It is not a Massachusetts company. That being so, it appears for now that this action probably will not be remanded.

■ This is not the first time that I have considered the issuance of a preliminary restraint on any action seeking to enforce the provisions of the Massachusetts Anti–Takeover Act. *Vista Resources, Inc. v. Connolly*, [1982 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 98,627 (March 16, 1982) [Available on WESTLAW, 1982 WL 1297]. In that case I granted the relief requested, expressing the conclusion that:

"The Take–Over Act appears to be in hopeless conflict with the purpose of the Williams Act, 15 U.S.C. § 78n(d)(e) and § 78n(d)–(f) and the regulations promulgated thereunder. The Massachusetts Take–Over statute provides for hearings and adjudications not contemplated by the Williams Act ... It creates a moratorium of one year during which the holder of 5% or more of the target company's equity securities may not make a take-over bid unless the holder has previously disclosed his intention to make that bid."

Nor was that the only instance in which judges of this court have expressed similar reservations concerning the constitutionality of the Anti–Takeover Act. Judge Young [*New World Entertainment, Ltd. v. Connolly*, 674 F.Supp. 1 (D.Mass.1987)] wrote that "There is a reasonable likelihood that Mass.Gen.Laws, ch. 110C, § 3 violates the Commerce Clause of the United States Constitution as applied to New World by the injunction of the Massachusetts Superior Court". Judge Skinner [*Newell Co. v. Connolly*, 624 F.Supp. 126 (D.Mass.1985)], in issuing an injunction, wrote that: "Accordingly, in my opinion, the plaintiff is likely to succeed on the merits on its argument that c. 110C conflicts with the Commerce Clause of the Constitution", citing *Edgar v. Mite Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

If plaintiff's request for preliminary injunctive relief is to be granted here, it must persuade the court that it is likely to succeed on the merits of its claim that the Anti–Takeover Act is unconstitutional. It depends upon such prior declarations by judges of this court, in part.

Defendant argues that the First Circuit Court of Appeals sees the matter differently and so held in *Agency Rent–A–Car Inc. v. Connolly*, 686 F.2d 1029 (1982). In that

decision, Circuit Judge (now Chief Judge) Campbell noted that the district judge granting preliminary injunctive relief "focused almost exclusively on only one factor: Agency's likelihood of success on the merits of its preemption claim ... The district court did not pass judgment on the merits of Agency's alternative claim that the Massachusetts statute violated the commerce clause". At page 1035. The Circuit Court of Appeals then went on with a preemption analysis, vacated the injunction based upon preemption, and remanded the matter to the district court for consideration of relief on the commerce clause claim. At page 1040, we find: "... *Edgar* indicates that the constitutionality of the Massachusetts statute presents very serious and substantial questions, leaving its validity very much in doubt". The court felt it inappropriate to decide the issue without further development of the record.

Subsequently, Judge Skinner entered the preliminary injunction in *Newell.* He recognized specifically that "Whatever the state of the law may be on the national scene, the law in this circuit probably precludes the entry of judgment for the plaintiff on this point (preemption)". At 128. He went on to determine that in his opinion, the plaintiff there would likely succeed on the argument based on the Commerce Clause. I concur in his thinking, and adopt the second full paragraph of his memorandum at page 128 of 624 F.Supp. It is my opinion also that Mass.G.L. ch. 110C conflicts with the Commerce Clause, fortified, of course, by the Supreme Court opinion in *Edgar v. Mite,* supra.

The State defendants have argued forcefully that *Edgar* is not controlling here; that the more recent decision of the Supreme Court, *CTS Corp. v. Dynamics Corp. of America,* —— U.S. ——, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) "offers a reliable analytical path" which leads one to the conclusion that ch. 110C satisfies the Constitution since it does not discriminate against interstate commerce. The *CTS* decision, as argued by plaintiffs here, deals with a shareholder rights statute, not an anti-takeover statute, as did *Edgar.* *Edgar* is vital and controls.

Having concluded that there is a likelihood of success on the merits of the plaintiff's claim, we look to the question of likelihood of immediate irreparable harm. It is there. The State defendants have declared an intention to enforce the statute, through counsel in open court. "If enforced in the instant case, the Anti–Takeover Act would erect an insurmountable barrier to the takeover bid to acquire all of High Voltage's common stock which Hyde Park is currently considering—a nationwide transaction which would involve many millions of dollars", quoting from the supporting affidavit of financial advisor to the plaintiffs, Dennis J. Friedman. The potential acquiror is a Delaware corporation with a place of business in New York. High Voltage has 4,818 shareholders, and the stock is traded on the New York Stock Exchange. According to Mr. Friedman, blocks of the stock are held by more than twenty institutional investors located in states such as New York, Illinois, California and Maryland. Failure to comply with the Act's prior disclosure requirements will require a bidder to delay its takeover bid until at least a year after the last of its purchases in excess of 5%: a substantial deterrent to takeover. Time is important to the success of a bid. Additionally, the risk, hereinbefore mentioned, of incurring civil and criminal liability constitutes a threat of immediate and irreparable harm. Judge Skinner described the harm to such a plaintiff as "the loss of a valuable right to take over a target company in accordance with applicable federal law". *Newell,* supra, at 129. As I wrote in *Vista,* three Courts of Appeals have held that if a takeover statute provides for delay, delay is the most potent weapon for incumbent management, inimical to the neutrality and shareholder free-choice protected by the Williams Act.

There is reluctance, once again, to issue an injunction affecting state officers, but as was said in *Newell,* their interest is the safeguarding of the public interest and no more. One cannot know what effect a change of ownership in the target would have. Nor can one forecast the effect of a

preliminary injunction on the target. Perhaps the effect on present management will be adverse. As for the shareholders, an injunction *may* prove to be a benefit, since, without a takeover bid, they may lose the opportunity to sell their shares at a more favorable price. Potential delay is avoided, and neutrality is advanced.

I cannot see how the public interest would be affected adversely by the issuance of an injunction. If the Anti–Takeover Act is unconstitutional, allowing a tender offer to proceed favors the public interest. An injunction would reflect the policy of neutrality, which Congress has declared to be a healthy policy.

■ Defendant High Voltage insists that it is "absolutely *entitled*" (emphasis supplied by counsel for High Voltage in a communication to the judge, hand delivered December 24, 1987 at 1:00 P.M.) under Supreme Court precedent, *to bring an enforcement action in the state courts after the filing of the federal complaint*, as here, and that abstention is favored in such circumstances (that is, abstention by the federal judge before whom the contest was begun).

The hearing before me on the application of Hyde Park took place over portions of two days (December 22 and December 23, 1987). The court placed no limitation on the time of argument, and it appeared to me that all avenues were explored, with one possible exception, which I brought to the attention of counsel. I asked for information as to how many (by way of percentage) of the stockholders of High Voltage were Massachusetts residents. Other than that, I could see no reason for not treating the hearing as one on the application for issuance of a preliminary injunction (rather than a temporary restraining order). Counsel agreed, and I was told that the information would probably be acquired and supplied.

The "awkward" situation forecast by plaintiffs has occurred. The federal Complaint was filed, with a request for a temporary restraining order. I denied a request for an ex parte hearing, requiring the applicant to notify the "other side" to be present the following day. Between that time and the commencement of the hearing before me, High Voltage filed a Complaint, a request for a temporary restraining order, had a hearing before an Associate Justice of the Superior Court, and was favored with the issuance of the restraining order, all as related hereinbefore. Now, I am told, I must abstain. On December 24th, I was hand-delivered a copy of the Justice's "Memorandum for Temporary Restraining Order" in which he enunciated his conclusion that *CTS* is authority for the proposition that an Act such as ch. 110C does not conflict with the Commerce Clause, and found that unless Hyde Park is restrained, shareholders and the plaintiff corporation will suffer immediate and irreparable harm if "an economic force intending to take over the entire company is not required to publicize their intentions and give full disclosure to all."

No one has greater respect for the Justices of the Superior Court than I. I do not pretend to sit as a "court of appeal" over actions taken by one of the members of that court, of which I was once a member. If the law required that I abstain for reasons of comity or otherwise, I would abstain. I am of the opinion, however, that under the circumstances existing here, abstention would be improper.

The defendant High Voltage insists that this Court must refrain from interference in the state court proceeding on the authority of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It is a fact that *Younger,* as was said in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) enunciated a strong policy against federal interference with *pending* state judicial proceedings, in the absence of extraordinary circumstances. Strictly speaking, *Younger* abstention requires respect for state proceedings already under way. As we have noted, when the application for injunctive relief was filed here, there was no state judicial proceeding. Had one been instituted, this Court would probably stayed its hand. We have duplicative litigation here by reason

of the action of High Voltage Engineering, apparently because High Voltage was dissatisfied with a federal forum.

We have considered whether equitable restraint requires abstention on this case. In a memorandum in opposition to the plaintiff's motion for injunctive relief, High Voltage calls our attention to the case of *Puerto Rico International Airlines, Inc. v. Silva Recio*, 520 F.2d 1342 (1st Cir.1975). Once again, the federal action there was filed subsequent to the state proceeding. The quote at page 24 of High Voltage's memorandum is interesting: "And against any claim to immediate federal court resolution must be weighed the unseemliness of duplicative court proceedings and the unnecessary federal-state friction that will be generated. In other words, in weighing the public interest, comity must be considered as well as plaintiff's potential harm. The fact of a previously filed and still pending proceeding in another court ought to be weighty in the balance of equities." *Puerto Rico International Airlines*, at 1345–46. If comity is a two-way street, the quote weighs against High Voltage instead of in its favor.

At any rate, the state court action has been removed (and properly so) to this Court. Since, as I have said, the addition of the non-diverse party by High Voltage was a device to avoid removal, the odds certainly are against remand.

The plaintiff's motion for preliminary injunctive relief is granted.

SO ORDERED.